No. 41,373

THE STATE OF KANSAS, *Appellee,* v. WALLACE J. SMIT, *Appellant.*

(337 P. 2d 680)

Opinion filed April 11, 1959.

*John Dekker,* of Wichita, argued the cause, and *E. L. Wheeler,* of Wichita, was with him on the briefs for the appellant.

*Guy L. Goodwin,* Deputy County Attorney, argued the cause, and *John Anderson, Jr.,* Attorney General, *Robert E. Hoffman,* Assistant Attorney General, and *Keith Sanborn,* County Attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: Defendant has appealed from an order overruling his motion for a new trial in a criminal prosecution in which he was convicted on two counts of burglary in the first degree, as defined by G. S. 1949, 21-513.

The state's case in chief consisted of the following:

Miss Joan W. Kincaid, the complaining witness in count two of the information, testified that on October 5, 1957, she was living alone and that about 4:30 in the morning of that date she was in bed and was awakened by the sheets being pulled from her. A man, whom she identified as the defendant, was standing over her bed. There was a light on in the room at the time. She started to sit up in bed, but did not scream, whereupon defendant fled. While in her bedroom he said nothing to her and did not threaten her. A dollar bill was missing from her purse which she had left on the kitchen table the night before. In January, 1958, she identified defendant in a "line-up" at police headquarters as being the man who was in her bedroom on the date in question.

Mrs. Mary Ann Warren, the complaining witness in count one of the information, testified that she was the mother of five small children living with her; that her husband's occupation required him to leave home at approximately ten minutes after 4:00 in the morning, and that at about 4:30 on the morning of January 1, 1958, shortly after her husband had left the house, she was awakened

by a man moving the pillow next to hers, and that the man was the defendant. There was a light on in the bathroom, a few feet from her bedroom, and this enabled her to get a good look at the man's face. She screamed, whereupon he ran down the hall and out of the house without saying anything or threatening her. No money or other thing of value was missing from the house. Like Miss Kincaid, she had identified defendant in the police "line-up."

A detective on the Wichita police force testified that on January 4, 1958, Miss Kincaid and Mrs. Warren identified defendant at the police "line-up" and he later discussed the matter with defendant. When told that he had been identified by both women, defendant denied entering their homes, but when advised that he was going to be charged with burglary and larceny said: "I didn't take anything," and then admitted entering the homes. He then admitted to the detective that he had been arrested in California for "window-peeping"; that he was possessed of the urge to see women without any clothes on; that he had "window-peeped" on a number of occasions in Wichita, and that he had entered a number of apartments. He admitted that he had the urge to commit rape, but that while standing beside women's beds he got the "shakes" so bad at times that "he could hardly stand it." He further stated to the detective that he was glad he had been caught before he killed somebody.

In his defense defendant called two character witnesses and each testified as to his good reputation.

Defendant himself took the witness stand and his testimony follows:

He was twenty-nine years of age and had been in Wichita about a year. He had a sexual "problem" and had been arrested in California for "window-peeping" and indecent exposure. When first arrested on the instant charges he denied everything, but, after being accused of stealing, admitted that he had entered the two houses in question. He went into their homes "just to view the women," did not intend to rape them and did not steal anything. While in Miss Kincaid's bedroom he committed an act of sexual perversion upon himself.

On cross-examination he stated that he had seen Miss Kincaid through her bedroom window; that he entered her home by the front door, went into her bedroom and started to pull the sheet off of her so that he could get a better view of her. He had seen Mrs. Warren through her bedroom window and entered her home by the back door. He went into her bedroom and started to pull the sheet

from her so that he could see her better. He admitted having entered other homes in Wichita for the same purpose.

Over objection, he was asked if on or about October 17, 1957, he had picked up a woman in his car, driven her to the country, and forced her to disrobe. He denied any such occurrence.

At the commencement of the trial, on defendant's motion, the state's witnesses were excluded from the courtroom until called to testify. During the course of the trial one of the persons in the courtroom was a Mrs. Rivers, and at the conclusion of defendant's testimony she went to the prosecuting authorities and told them that defendant was the man who on October 17, 1957, had forced her into his car and after being driven into the country was compelled to disrobe. Accordingly, the state called her as a rebuttal witness and, over the vigorous objections by defendant, she was permitted to testify as to the occurrence. Her testimony will not be detailed, but she positively identified defendant as being the man who on the night in question had committed the acts mentioned. During the course of the incident the man had partially disrobed himself. She was not raped and escaped by jumping out of his car. On cross-examination it was developed that she previously had identified a man other than defendant as her assailant; that she later "weakened" in her identification, and that at the suggestion of the police she had attended this trial so as to satisfy herself whether defendant was her assailant. She further testified that after observing defendant on the witness stand she was positive that he was the man.

Following the testimony of several witnesses called in surrebuttal by defendant, the trial was concluded and resulted in a verdict of guilty on both counts of the information as charged. Defendant's motion for a new trial being overruled, he has appealed.

Defendant specifies six alleged errors and raises six corresponding questions, all of which have to do with the testimony of Mrs. Rivers and the fact she was permitted to testify for the state in rebuttal.

Among other things, it is contended she should not have been permitted to testify because her name as a witness was not endorsed on the information. Under the circumstances, there is no merit to this contention. It was shown that the state was unaware of her until after defendant himself had testified, and therefore had not listed her as a witness. The trial court did not abuse its discretion

in permitting her to testify. (*State v. Bean*, 181 Kan. 1044, 317 P. 2d 480.)

It is contended that it was error not to grant defendant's motion for a continuance when it was apparent that defendant and his counsel were taken by surprise following the testimony of Mrs. Rivers. The record discloses the court did recess the trial at about 11:00 o'clock one morning until the next morning, and during that interval heard argument concerning her testimony. Under the circumstances disclosed we are unable to say that defendant's rights were prejudicially affected or that there was an abuse of discretion in denying a further continuance.

It is contended the court erred in refusing to strike all of the testimony of Mrs. Rivers because she was present in the courtroom during the entire trial in direct violation of the order excluding the state's witnesses. This contention is likewise without merit. Neither the court, the state, nor anyone else, knew that she would be a witness until the defendant himself took the stand. Furthermore, she did not testify directly on any matters presented by the state in its case in chief. Under the circumstances, there was no abuse of discretion in permitting her to testify even though she was present in the courtroom during the trial.

It is contended that it was error to permit Mrs. Rivers to testify concerning matters which were purely collateral, the argument being that the state was bound by defendant's answers when being cross-examined relative to the alleged incident of October 17, 1957, involving another woman. We think there are several answers to this contention, one of which is that the testimony of Mrs. Rivers was not on a "collateral" matter. The rule is well established that in cases involving lewd and lascivious conduct in sexual matters, evidence of other similar acts is admissible to show tendencies and lustful disposition. (*State v. Whiting*, 173 Kan. 711, 713, 252 P. 2d 884.) Further, it is doubtful that it successfully could be contended her testimony would have been inadmissible in the state's case in chief, and, that being so, it was, under the circumstances, not error to admit it in rebuttal. (*State v. Mendenhall*, 133 Kan. 664, 673, 674, 3 P. 2d 489; *State v. Beam*, 175 Kan. 814, 816, 817, 267 P. 2d 509.) And furthermore, it must be remembered that defendant took the witness stand himself, and, in addition, put his character in issue.

It is further contended the court erred in failing to compel Mrs. Rivers or the police to disclose the name of the man whom she had

previously "identified" as her assailant on the night of October 17, 1957. It is not contended this undisclosed man would have been able to testify to any material point in issue, but it is argued that a proper defense would include an investigation of such undisclosed person and possibly would have given defendant a stronger defense to her accusation.

In view of Mrs. Rivers' positive identification of defendant while on the witness stand, and her testimony that her former identification of another man had been made with some "reservation," and in view of her rigorous cross-examination by defendant, we think it was not error for the court to refuse to permit the identity of the innocent man in question to be disclosed, or that any substantial right of defendant was in any way prejudiced by the ruling.

It is also contended that it was error to admit the testimony of Mrs. Rivers for any purpose whatsoever when there was not clear and convincing proof of the commission of a crime and when there were such serious doubts as to the reliability of Mrs. Rivers as a witness. There are at least two answers to these contentions. In the first place, defendant had already taken the witness stand and admitted entering the two homes in question. Secondly, the credibility of Mrs. Rivers was solely a question for the jury, and even without her testimony there was sufficient evidence before the jury to uphold the finding of guilt.

Finally, it is argued that the court erred in overruling defendant's motion for a new trial, but under this heading nothing is contended other than what already has been mentioned. No complaint is made as to instructions. The record shows that throughout the trial, and on appeal to this court, defendant was ably represented by industrious counsel. The record further discloses, however, that defendant was accorded a fair trial and that his rights were in no way prejudicially affected.

Nothing appearing to warrant a reversal, the judgment is affirmed.