No. 59,135

STATE OF KANSAS, *Appellee*, v. JOHN F. CLEMENTS, JR.,
*Appellant.*

(734 P.2d 1096)

Opinion filed March 27, 1987.

*Melissa Sheridan*, assistant appellate defender, argued the cause, and *Benjamin C. Wood*, chief appellate defender, was with her on the briefs for appellant.

*Michael E. Ward*, deputy county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LOCKETT, J.: John F. Clements, Jr., appeals his jury trial con-

viction of aggravated criminal sodomy (K.S.A. 1986 Supp. 21-3506[a]).

The general background facts may be summarized as follows. Clements lived with his fiancee in her trailer. The trailer was located approximately 50-70 feet from a baseball card shop operated out of a home. Eleven-year-old P.V. first met the 27-year-old defendant in early May 1985 at the baseball card shop. It was a gathering place for young boys interested in baseball cards. Defendant invited P.V. to his residence several times. Defendant was charged with having sodomized P.V. on the latter's next to last visit to defendant's residence in late May 1985. Two counts of promoting obscenity to a minor (K.S.A. 21-4301a) involving two other young boys were filed in the same complaint. These latter charges arose from September 1985 incidents which involved showing pornographic material to the boys. Trial on all three charges occurred in December 1985, with defendant being convicted on the obscenity charges. A mistrial was declared on the sodomy charge as the jury was unable to reach a verdict. Upon retrial of the sodomy charge in January 1986, Clements was convicted. This direct appeal is from the sodomy conviction. Additional facts will be stated as necessary for determination of particular issues on appeal.

In his first issue, Clements contends the trial court improperly allowed a mental health therapist to give opinion evidence on the child victim's credibility.

From September 1985 through the trial in January 1986, P.V. was being counseled by Thomas Pletcher, a mental health therapist. His background included experience with sexually abused victims and specialized training for the treatment of sexually abused victims. Pletcher saw P.V. in counseling seven times up to the time of Pletcher's trial testimony. Pletcher testified as to what P.V. had told him about being sodomized by the defendant. Over defendant's objection, Pletcher testified that P.V.'s progress in therapy during counseling was consistent with what he would expect when a young boy has been sodomized under such circumstances. Pletcher testified that had P.V. been sodomized over a period of time by a very close family member or forcibly sodomized, the psychological damage would have been greater and his progress in therapy would have been slower. Force was

not involved in the incident as related by P.V. Defendant, in his testimony, denied any act of sodomy had taken place.

Clements likens Pletcher's testimony to that held improper in *State v. Jackson*, 239 Kan. 463, 721 P.2d 232 (1986), and *State v. Lash*, 237 Kan. 384, 699 P.2d 49 (1985).

In *State v. Jackson*, the trial court had permitted two expert witnesses, social workers with expertise in child abuse treatment, to testify before a jury that "in their opinions the child was telling the truth and in their opinions the defendant committed the acts of molestation with which he was charged." 239 Kan. at 470. This court reversed. Labeling the expert opinion testimony as prejudicial error, the court explained:

"Here, the witnesses attempted to serve as human lie detectors for the child and both told the jury that in their professional opinions the child was truthful and the defendant was guilty as charged. We are convinced that it was the function of the jury to hear the testimony of the witnesses as to what the child said, and then to make a determination of the reliability of the child's statements." 239 Kan. at 470.

We then held:

"An expert's opinion in a proper case is admissible up to the point where an expression of opinion would require him to pass upon the credibility of witnesses or the weight of disputed evidence." 239 Kan. 463, Syl. ¶ 8.

In *State v. Lash*, 237 Kan. 384, the defendant was accused of sexually molesting his fifteen-year-old son. A psychologist who had interviewed the son was called to testify as an expert witness. The prosecutor asked the psychologist for his opinion, based on results of his testing and interviewing the son, whether the son had been sexually molested by the father. The defense objected. The court then permitted the psychologist to testify as to whether he had an opinion whether the son had been sexually molested, but would not permit the expert to testify as to whether the son had been sexually molested by the father. 237 Kan. at 384-85. The defendant was acquitted. The State appealed on a question reserved, namely, did the trial court err in not permitting the expert to testify that in his opinion the son had been sexually molested by the defendant? We upheld the lower court's ruling, stating:

"In the case now before us, the alleged victim was fifteen years of age and testified before the jury. The defendant, likewise, testified and denied any acts constituting indecent liberties with his son. In this case, when the prosecutor

asked the psychologist to give his expert opinion as to whether the alleged victim had been sexually molested by his father, the prosecutor, in effect, was asking the expert for his opinion as to whether the son was telling the truth that his father was his molester. The question clearly was improper, since such an expression of opinion would require the expert to pass upon the credibility of witnesses or the weight of disputed evidence. Under the circumstances shown in the record in this case, we hold that the district court did not err in its ruling that the psychologist could not testify before the jury as to his expert opinion that the alleged victim had been sexually molested by the defendant, his father." 237 Kan. at 386.

Defendant contends that Pletcher was improperly permitted to testify concerning P.V.'s credibility. We do not agree. Although the complained-of testimony was close to the line of impermissibility, it does not cross the line. The witness did not give an opinion as to whether or not P.V. was telling the truth. Rather, the testimony may be compared to a situation where a patient tells his treating physician he had been held without food and water in a certain type of environment, and the physician testifies the victim's initial condition and progress in treatment are consistent with the events related to him by the patient. The physician, under such circumstances, is not testifying that any particular person committed a criminal act against his patient or that his patient is telling the truth as to how or by whose acts he suffered injury. The door is thus left open to cross-examination relative to other causal circumstances which might also be consistent with the physician's opinion as to his patient's condition and progress.

Mr. Pletcher's testimony relative to his patient's initial condition and progress during treatment may tend to corroborate parts of P.V.'s testimony inferentially, but Pletcher's testimony is not an impermissible opinion on whether or not P.V. is testifying truthfully as to the facts giving rise to sodomy charges.

We conclude the trial court did not abuse its discretion relative to the admission of the complained-of portion of Pletcher's testimony.

For his second issue, Clements contends the trial court erred in the giving of an instruction relative to witness credibility.

The instruction given was:

"It is for you to determine the weight and credit to be given to the testimony of each witness. You have a right to use that knowledge and experience which you

possess in common with men in general, in regard to the matter about which a witness has testified. You may take into account the witnesses['] ability and opportunity to observe and know the things about which he or she has testified, their memory, manner and conduct while testifying, and any interest they may have in the result of this trial, and the reasonableness of their testimony considered in the light of all the evidence in this case."

Defendant argues that this instruction was prejudicial because it focused on some testimony and undercut his own testimony.

On appeal, Clements contends PIK Crim. 2d 52.09 should have been given. This pattern instruction states:

"It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified."

K.S.A. 22-3414(3) provides, in pertinent part:

"No party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he objects and the grounds of his objection unless the instruction is clearly erroneous. Opportunity shall be given to make the objections out of the hearing of the jury."

Defendant made no contemporaneous objection as required by the statute. Instead, defense counsel stated, "I have no objection to any of the Court's instructions."

In *State v. Maxwell,* 234 Kan. 393, Syl. ¶ 5, 672 P.2d 590 (1983), this court stated the rule of law pertaining to unobjected-to jury instructions:

"When an instruction has not been objected to at trial, this court's scope of review is limited to a determination of whether the instruction is clearly erroneous. An instruction is clearly erroneous when the reviewing court reaches a firm conviction that if the trial error had not occurred there was a real possibility the jury would have returned a different verdict. (Following *State v. Stafford,* 223 Kan. 62, Syl. ¶ 2, 573 P.2d 970 [1977].)"

See *State v. Mason,* 238 Kan. 129, 140, 708 P.2d 963 (1985); *State v. Price,* 233 Kan. 706, 711, 664 P.2d 869 (1983); *State v. Korbel,* 231 Kan. 657, 661, 647 P.2d 1301 (1982).

A similar challenge was made to a similar instruction in *State v. Willis,* 240 Kan. 580, 731 P.2d 287 (1987). In *Willis,* as in the case before us, there was no contemporaneous objection to the instruction. We concluded in *Willis* that the instruction was not clearly erroneous although the better practice would have been to have given PIK Crim. 2d 52.09. The instruction before us is

virtually identical to the first paragraph of the *Willis* instruction and we conclude that its giving is, likewise, not clearly erroneous.

The third issue raised by Clements is whether the district court erred in not instructing the jury on the lesser included offense of indecent liberties with a child.

K.S.A. 1986 Supp. 21-3107(3) provides:

"In cases where the crime charged may include some lesser crime, it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced. If the defendant objects to the giving of the instructions, the defendant shall be considered to have waived objection to any error in the failure to give them, and the failure shall not be a basis for reversal of the case on appeal."

Defense counsel neither requested such an instruction nor objected to the lack of such an instruction.

We turn then to the question of whether the trial court had a duty to instruct on indecent liberties with a child as a lesser included offense to the aggravated criminal sodomy charge herein.

K.S.A. 1986 Supp. 21-3506 provides, in pertinent part:

"Aggravated criminal sodomy is:
(a) Sodomy with a child who is not married to the offender and who is under 16 years of age."

Aggravated criminal sodomy is a class B felony. This statute was in effect in the same form in 1985.

K.S.A. 1984 Supp. 21-3503(1) provides:

"Indecent liberties with a child is engaging in any of the following acts with a child who is not married to the offender and who is under 16 years of age:
(a) Sexual intercourse;
(b) sodomy; or
(c) any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender or both."

Indecent liberties with a child is a class C felony. Section (b), which included sodomy as a part of K.S.A. 1984 Supp. 21-3503(1), was only effective for a one-year period between July 1, 1984, through July 1, 1985. The 1985 legislature removed sodomy from the statute.

The State concedes sodomy with the child herein could have

been charged as either aggravated criminal sodomy (K.S.A. 1986 Supp. 21-3506) or indecent liberties with a child (K.S.A. 1984 Supp. 21-3503[1][b]), and that the offenses are identical, the only difference being that the former is a class B felony and the latter is a class C felony. Where identical offenses are involved, the question is not truly a matter of one being a lesser included offense of the other. Each has identical elements and the decision as to which penalty to seek cannot be a matter of prosecutorial whimsy in charging. As to identical offenses, a defendant can only be sentenced under the lesser penalty. Here, it would have been the better practice to have instructed on indecent liberties with a child, but the error could have been remedied by sentencing defendant as having been convicted of a class C felony rather than a class B felony. Accordingly, the sentence imposed herein must be vacated.

For his final issue, defendant contends the trial court erred in admitting evidence of prior crimes under K.S.A. 60-455.

K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

The State claims the evidence of Clements' 1982 convictions in Alaska of sodomy and lewd acts involving five boys was admissible to show plan or scheme under K.S.A. 60-455. In 1981, while serving in the United States Navy, Clements was stationed in Alaska. The State asserts Clements' plan or scheme was to become involved in Boy Scout work so he could befriend young boys, gain their confidence so they would be alone with him without concern, and then sodomize them. It contends that four years later, a similar plan was utilized by Clements in visiting the baseball card shop frequented by young boys and gaining their friendship and confidence, which ended in P.V. being sodomized in defendant's home.

Clements argues that the evidence was introduced to prove his inclination, tendency, propensity, or disposition to commit sodomy. After reviewing the record, we agree.

Evidence that a person has committed a crime or civil wrong in the past is not admissible as an inference that the person committed a subsequent crime or civil wrong. K.S.A. 60-455, under specific circumstances, allows the State in its case in chief to introduce evidence of a prior crime or civil wrong when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake. When ruling on the admissibility of evidence of a prior conviction under 60-455, the judge must (1) determine it is relevant to prove one of the facts specified in the statute, (2) determine that fact is a disputed material fact, and (3) balance the probative value of the prior conviction evidence against its tendency to prejudice the jury. If the potentiality of natural bias and prejudice overbalances the contribution to the rational development of the case, the evidence must be barred. *State v. Bly,* 215 Kan. 168, 523 P.2d 397 (1974).

Before trial, the State announced that it would introduce evidence of Clements' prior convictions. The State assured the trial judge that it was not offering the evidence of Clements' prior convictions just to prove that he had a prior conviction for a similar offense but to show Clements' plan or scheme. The State contended that it would prove that four years earlier Clements had become involved with Boy Scouts so that he could prey on young boys. The defendant objected. The trial judge did not rule on the admission of the defendant's prior convictions until after the trial had commenced. Unfortunately, the record of the State's case in chief is devoid of any such evidence of a plan or scheme. The trial record reveals the State presented only evidence of Clements' prior convictions for sodomy in its case in chief.

The deputy county attorney in his opening statement pronounced:

"Now, the defendant, he will testify—he will tell you that the defendant did not admit the crime, he denied it, but Lt. Murphy will tell you, ladies and gentlemen of the jury, that at some point in the investigation he determined that Mr. Clements . . . may have been charged while in the Navy with similar offenses. By that I mean sexual abuse of young children. Lt. Murphy will then testify that he inquired of the Navy about that and that he received from the Navy certain documents, and while he is on the stand, I will hand him and he will testify concerning the Navy personnel record of John F. Clements, Jr. Contained

in—within those Navy records, personnel records is information indicating that in April of 1980, this defendant was convicted of various counts of sodomy, sodomizing young boys and of engaging in lewd and lascivious behavior with young boys and was sentenced by a general court martial and confined to a Navy brig for a period of time for those offenses. Now, ladies and gentlemen, as the Court has told you and as Mr. Stansbury has told you and I will tell you again, the State has the burden of proving this case beyond a reasonable doubt.

During the State's case in chief, the trial court ruled on the State's motion to admit evidence of defendant's prior convictions, stating:

"I was asked to admit the authenticated records, personnel records of the defendant which were submitted to the Court plus a certified copy of a journal entry. I think the first thing that a trial court has to do is to weigh this type of evidence to balance that type of evidence for it[s] probative value against any prejudicial effect, and the Court feels that in this particular instance the probative value does outweigh any prejudice or effect that the admission of those two exhibits might have on the jury. Once again, I am allowing this only for the purposes of plan or scheme, and I realize that plan is the only thing that is going, but the appellate court has sometimes used plan and scheme more or less interchangeably."

After additional testimony, the State called the investigating officer, Detective Murphy of the Butler County Sheriff's department, as a witness. Detective Murphy testified about his investigation and was then asked to identify the records of the defendant's prior conviction. The defense attorney's objection to the admission of the records into evidence was overruled by the judge. The trial judge then instructed the jury:

"Ladies and Gentlemen of the Jury: At this time you are instructed that evidence — this evidence hasn't been introduced as yet, but apparently is going to be by the State and tending to show that prior to the time alleged in the Information and on another occasion the defendant committed other acts and crimes similar to the charge of aggravated criminal sodomy as is found in this particular Information, and in this connection you are instructed that even if you believe such evidence and testimony to be true, it is not to be considered by you as any evidence of the guilt of the defendant for the offense charged here, and the same is insufficient in standing by itself to support a verdict of guilty to the charge of aggravated criminal sodomy. This evidence is received and is to be considered by you only for its value if any as circumstances bearing upon the question of the defendant's plan or scheme as it relates and is relevant to the offense of aggravated criminal sodomy. This evidence should be considered along with all of the other evidence for this purpose only and should be disregarded for any other purposes."

He then admitted Clements' Navy record into evidence.

### Detective Murphy then testified:

"Q    (By Mr. Ward) Detective Murphy, you are a former serviceman, aren't you?

"A    Yes, I am.

"Q    Are you familiar with the service initials that are used in the service for various words?

"A    Oh, lots of them, yes sir.

"Q    Okay. Would you tell the jury, if you can, what that page on State's No. 6 that you have been referring to says, please?

"A    What it is referring to is a general court martial in which the offense is a violation of the Uniform Code of Military Justice, Article 125, and six counts, all counts of that article.

. . . .

"Q    (By Mr. Ward) I mean—got to paraphrase it in your own words. What does that document say?

"A    One through five specifications did at the naval station, Adak, Alaska. Pardon me. Commit sodomy with a child under the age of sixteen—No. 1, on or about 6 September 1981. Number 2, on or about 23 August 1981. Number 3, on or about 24 August 1981. Number 4, on or about 27 August 1981. Number 5, on or about 30 May 1981; and Number 6, on or about August 1981, at Great Sitkin Island, Alaska. The violation of the Uniform Code of Military Justice, Article 134, two specifications of both specifications—Commit a lewd act upon the body of a male under sixteen years of age. Number 1, at Naval station at Adak, Alaska, on or about 30 May 1981; and Number 2, at Great Sitkin Island, Alaska, on or about 20 August 1981.

      MR. STANSBURY: That is on page number—

"Q    (By Mr. Ward) Detective Murphy, do you know what the word 'specification' means as used by the military?

"A    Specification to my knowledge as used by the military means 'count.'

"Q    Okay. Please proceed with your recitation of that first paragraph there.

"A    There was a sentence adjudged and I am not sure what the CHL X 10 years is there and FF of $300 X 2 years.

"Q    Do you know what FF means in military usage?

"A    I believe that is forfeiture of fine, and the RIR, which to my knowledge is a reduction in rank to E-1 and a DD, which is a dishonorable discharge.

"Q    Now, I believe in all fairness to the defendant that there is a later paragraph perhaps on this same page that modifies that previous sentence adjudged; and would you please read to the jury paragraph number two?

"A    82 August 02, I believe it is 1982 August, Convening. Commander, Naval Base, Seattle, Washington. In the foregoing case, General Court Martial of ET3 John Frank Clements, Jr., U.S. Navy, That part of the—I am losing my place here—That part of the sentence which adjudged a dishonorable discharge is disapproved and only so much of the sentence as reflects a BCD—which is a bad conduct discharge—is approved. The remainder of the sentence is approved except that portion thereof which adjudged CHL in excess of 18 months will be suspended for a period of six months from the date of trial, at which time, unless sooner vacated, the suspended portion

will be remitted without further action. The forfeiture of pay shall apply to pay becoming due on and after the date of this action. The Navy Brig, Naval Station, Seattle, Washington is designated as the place of CHL.

"Q    Now, Lt. Murphy, think about CHL for a minute, What might that be? What would that mean? Would that mean 'confinement for hard labor?'

"A    Very possibly.

"Q    Okay.

"A    The ROT is forwarded to the Judge Advocate General of the Navy for review by the court of military review. The ROT means 'record of transcript' I believe.

"Q    Okay. Lt.—Detective Murphy, let me hand you what has already been labeled Plaintiff's Exhibit No. 7 for identification purposes and would ask you to examine that, please.

"A    Yes sir.

"Q    Have you had an opportunity to look at Plaintiff's Exhibit No. 7 before your court appearance here today?

"A    Yes sir, I did.

"Q    Have you compared the contents of Plaintiff's Exhibit No. 7 with the contents of Plaintiff's Exhibit No. 6 that you have just read to the jury?

"A    Yes sir.

"Q    What appears to be the difference after you have compared the two?

"A    Exhibit No. 7 is a military form of a journal entry which breaks down more explicit the charges that I just read from the other.

"Q    Okay. As I understand it, it is another version of the same information?

"A    Yes sir.

"Q    Only in different terms.

"A    Yes sir.

"Q    What is this document labeled State's Exhibit No. 7—what is it?

"A    It would be a journal entry from the court martial.

"Q    Okay. Would you please turn to page 3 of that document and tell me if that document is certified and a true and correct copy of that journal entry?

"A    It is certified to be a true copy signed by a C. G. Baker.

"Q    Okay. Your Honor, my notes reflect that State's exhibit No. 5 was not admitted into evidence but that State's Exhibit Nos. 6 and 7 have been admitted by the Court.

"THE COURT: That is correct.

"MR. WARD:    I have no further questions, Judge."

The State rested its case without presenting any evidence of the defendant's plan or scheme to prey on young boys in Alaska. Even before the record of Clements' prior convictions was admitted into evidence, the State's attorney, in his opening statement to the jury, referred to the convictions. On direct examination Clements admitted that he had pleaded guilty to some of the prior charges. On cross-examination, the State then brought out the details of the Alaska offenses.

Here, the State failed to show plan or scheme. It only proved that the 1981 and the 1985 offenses were violations of the same or similar statutes. K.S.A. 60-455's rule limiting evidence of other crimes and civil wrongs was not enforced. The evidence of Clements' prior convictions to prove that he preyed on young boys was improperly admitted into evidence.

Clements is not entitled to a perfect trial but he is entitled to a fair one. The erroneous admission of evidence does not always require a new trial. Where the erroneous admission of evidence amounts to a denial of substantial justice, the defendant is entitled to a new trial. The admission into evidence of other crimes did not comply with the strict requirements of 60-455 and resulted in a denial of substantial justice. Therefore, Clements did not receive a fair trial and this conviction must be reversed and the defendant granted a new trial.

Reversed and remanded for a new trial.

HERD, J. dissenting: The majority reverses the defendant's aggravated criminal sodomy conviction and remands for a new trial on the ground the State failed to lay a proper foundation for the admission of Clements' prior convictions, and thus did not comply with K.S.A. 60-455. I disagree with this conclusion and would hold that the nature of the prior offenses makes them relevant and material to the determination of this case and proof of a prima facie case by the State was the only foundation required for admission.

Before discussing K.S.A. 60-455 and its applicability here, it is first necessary to comment upon the many common traits and methods of adults who sexually abuse children.

The defendant is alleged to have committed aggravated sodomy on an eleven-year-old boy. If those allegations are true, the defendant is a homosexual pedophile. Pedophilia is defined as the act or fantasy of engaging in sexual activity with prepubertal children as a *repeatedly* preferred or exclusive method of achieving sexual excitement. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 271 (3d ed. 1980). A homosexual pedophile is one who is sexually aroused by a child of his own sex. Such conduct is psychologically deviant sexual behavior and is a mental illness.

Male homosexual child sexual abusers have a pattern or method of operation they usually follow. They seek out activities where young boys gather, such as boy scout and cub scout groups, Sunday School classes, little league baseball, convenience stores, fast-food restaurants, and retail stores specializing in juvenile items. There, they make the child's acquaintance and bribe the child to leave the group and go with the abuser.

There are a number of traits common to all pedophiles. They are sexually aroused by children. The accosting of children is a compulsion driven by a strong sexual urge. They attempt to minimize or rationalize their conduct. Some of these rationalizations are enumerated by John Conte, Ph.D, in his article, *Clinical Dimensions of Adult Sexual Abuse of Children,* 3 Behavioral Sciences & the Law 341, 350 (1985):

> "The cognitive distortions or rationalizations common to adults who have sex with children are frequently discussed in clinical settings. Abel, Becker, and Cunningham-Rather (1984) identify seven distortions common to child molesters they've seen in their practice:
>   *A child who does not physically resist really wants sex;
>   *Having sex with a child is a good way to teach a child about sex;
>   *Children don't tell about sex with an adult because they really enjoy it;
>   *Sometime in the future our society will realize that sex with children is really all right;
>   *An adult who feels a child's genitals is not really being sexual with the child so no harm is really being done;
>   *When a child asks about sex it means that the child wants to see the adult's sex organs or have sex with the adult;
>   *A relationship with a child is enhanced by having sex with him/her.
>   . . . .
> "These distortions make it possible to deny, minimize or rationalize the behavior of having sex with a child. It is assumed that they develop after the adult has sexually abused a child as a way of dealing with the behavior, guilt, or other pain the offender feels over what he has done."

Adults who sexually abuse children are repeat offenders. They can be cured only by intervention. Arrest and conviction is one method of intervention. If intervention is not effected, they continue on from one victim to another until they are caught. They usually do not want to quit their illicit activity since they obtain sexual satisfaction from it.

Such behavior is explained by psychologists as follows:

"A critical factor in all sexual anomalies is the reluctance of clients to admit their

sexual preferences and, even in admitting them, to want to let go of urges that are so powerful and rewarding, that they are willing to risk everything including family, friends, careers and incarceration to satisfy them." Langevin & Lang, *Psychological Treatment of Pedophiles,* 3 Behavioral Sciences & the Law 405 (1985).

Langevin and Lang further comment:

"[O]ne must recognize that the pedophile will be reluctant to give up his sexual behavior which he perceives as positive and rewarding, just as conventional heterosexuals perceive their sexuality . . . .

"It is well known that sex offenders are notoriously difficult to treat. As such, they are hard-pressed to admit the full extent or frequency of occurrence of their sexually anomalous behavior. Distrust and secretiveness pervade their orientation toward significant others or outsiders; most are manipulative and exploitative.

. . . .

"Pedophiles are also highly resistant to any treatment process because their behaviors with children fulfill sexual needs. Much of their sexual behavior is egosyntonic, so pedophiles experience less guilt or awareness of the emotional impact of their intrusive sexuality on children." pp. 410-11.

For additional background information on this subject, see Fortune, Sexual Violence—The Unmentionable Sin 176 (1983); Mohr, Turner, & Jerry, Pedophilia and Exhibitionism 75 (1964); Money, Paraphilias: Phenomenology and Classification, 38 American Journal of Psychotherapy 164 (April 1984).

In this case Clements associated himself with a group of young boys in a baseball card shop, singled out his victim, got him alone, and performed sodomy on him. The child was sworn to secrecy and became increasingly introverted and ashamed, necessitating psychiatric counseling.

Clements is a repeat offender. He was convicted of child sexual molestation in Alaska while he was in the Navy and received a bad conduct discharge. In Alaska, as in the present case, Clements first associated himself with a group of young boys. He became a scout master and molested five young Boy Scouts. He will continue such conduct unless he is forced to take psychiatric treatment. He has left a trail of disturbed children and he will leave many more before he is stopped.

The trial court admitted evidence of the defendant's prior convictions of child sexual abuse in this case on the theory of plan or scheme. The majority has reversed, finding the prior convictions inadmissible under K.S.A. 60-455.

Let us examine K.S.A. 60-455 and our cases construing it as it pertains to deviant sexual offenses. K.S.A. 60-455 was enacted in 1963 and is essentially a codification of Kansas common law. The rule of evidence in K.S.A. 60-455 as applied to criminal law did not materially change prior case law. *State v. Wright,* 194 Kan. 271, 274, 398 P.2d 339 (1965).

As early as the turn of the century, we recognized that evidence of the commission of a crime not connected with a crime charged is inadmissible in a criminal case as prejudicial. *State v. Kirby,* 62 Kan. 436, 63 Pac. 752 (1901). However, exceptions to the rule were consistently recognized, one of which permitted admission of evidence of similar acts where a defendant was charged with a sexual offense. The evidence was admitted to show the "lustful disposition" and nature of the defendant. We discussed this exception in *State v. Stitz,* 111 Kan. 275, 276, 206 Pac. 10 (1922):

"While the general rule is that one crime cannot be established by proof of other independent crimes, there are well recognized exceptions to the rule, and one of them is that in sexual offenses proof of prior and subsequent acts of intercourse are admissible to show the lustful disposition, the existence and continuance of the illicit relation, as these tend to explain the act charged and corroborate other testimony of the prosecution. The exception has been so frequently and thoroughly considered that there is no occasion for further consideration or comment."

There is another interesting discussion of the exception in *State v. Waldron,* 118 Kan. 641, 236 Pac. 855 (1925). There, the defendant, a pastor of a leading Protestant church in Great Bend, was charged with statutory rape on the person of a girl under eighteen years of age. During cross-examination of the defendant, letters he had written to another young woman were admitted. The defendant objected, but this court ruled admission of the letters was not error because it disclosed the defendant's "grossly indelicate attitude towards young women of his congregation" and discredited his avowed innocence. 118 Kan. at 649. For other common-law cases where similar exceptions were applied, see *State v. Smit,* 184 Kan. 582, 585, 337 P.2d 680 (1959), holding that in cases involving sexual offenses, such as lewd and lascivious conduct, evidence of similar acts is admissible to show tendencies and lustful disposition; *State v. Whiting,*

173 Kan. 711, 713, 252 P.2d 884 (1953), holding that a defendant charged with sexual offenses is subject to introduction of evidence of similar offenses for the purpose of showing the lustful disposition or nature of the defendant; *State v. Allen*, 163 Kan. 374, 183 P.2d 458 (1947), where evidence of two previous similar offenses against other women was competent in a prosecution for attempted rape; *State v. Funk*, 154 Kan. 300, 118 P.2d 562 (1941), where evidence of recent conduct of defendant toward other young girls was competent to show lustful disposition and system of operation; *State v. Jenks*, 126 Kan. 493, 268 Pac. 850 (1928), holding that evidence a defendant had taken indecent liberties with other girls was admissible in a prosecution for statutory rape; and *State v. Borchert*, 68 Kan. 360, 361-62, 74 Pac. 1108 (1904), where, in a prosecution for statutory rape, this court allowed the admittance of evidence of other similar acts, not to prove offenses, but "in spite of that fact."

The foregoing cases occurred prior to the enactment of K.S.A. 60-455. Other than some refinements placed on the exception to the rule in *State v. Taylor*, 198 Kan. 290, 292-93, 424 P.2d 612 (1967), and subsequent cases, the prior sexual conduct exception has not been overruled.

K.S.A. 60-455 provides:

"Subject to K.S.A. 60-447 evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when *relevant* to prove some other *material* fact *including* motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

It is interesting to note that the legislature left plenty of leeway for exceptions to the rule in the statute. It lists eight specific exceptions but precedes the statutory exceptions by the term "including." This indicates that the eight listed exceptions are not a complete list, but rather are only examples among which others might be included, depending upon "relevancy" and "materiality."

Let us now examine *State v. Taylor*, 198 Kan. 290. There, the defendant's conviction of molesting a child under the age of fifteen years was reversed, not because the statute was violated,

but because the "lustful disposition" exception was defined too broadly in the instructions. Justice Fontron, speaking for the court, construed K.S.A. 60-455, stating:

"We view his admission of the conviction on child molestation charges as being properly presented as part of the state's case in chief provided, of course, that the jury was correctly charged as to the purpose for which such evidence was admitted and might be considered. This court has long held that evidence of similar offenses is admissible where it tends to show intent, motive, *scienter*, plan, identity, scheme or method of operation. [Citations omitted.] . . . .

"But the defendant maintains that the trial court improperly instructed the jury as to the purpose for which the evidence was received. The instruction, as given by the court, reads:

" 'Evidence of prior and independent sexual offenses may be considered as evidence tending to show a lustful disposition, the existence or continuance of the relation, as such acts tend to explain the act charged and corroborate other testimony relating to the present charge.'

"It must be conceded that this instruction is couched in language used by this court in *State v. Stitz*, 111 Kan. 275, 206 Pac. 910, and later quoted with approval in *State v. Allen*, 163 Kan. 374, 183 P. 2d 458. Nonetheless, we are not inclined to approve its use today in view of the subsequent enactment of K.S.A. 60-455. . . .

. . . .

"This statute defines the purposes for which evidence of similar offenses may be admitted. Neither explanation of the act charged nor corroboration of other testimony relating to the charge is comprehended within the language or the import of the act. In our opinion, a trial court should limit its instructions concerning the purposes for which similar offenses may be considered to those purposes set out in the statute and purposes analogous thereto. *Accordingly, we are constrained to disapprove that part of the instruction which follows the words 'lustful disposition' as well as the language in the Stitz and Allen cases from which that portion of the instruction was taken.*" (Emphasis added.)

Clearly *Taylor* overruled *Stitz* and *Allen*, but it did not mention the numerous other cases with similar holdings, did not disturb the common-law "lustful disposition" exception, and added "scienter" and "method of operation" to the list of exceptions. Justice Fontron was objecting to the holding in *Stitz* and *Allen*, where it was stated that admission of the commission of other crimes in addition to showing lustful disposition also "tend[s] to explain the act charged and corroborate other testimony of the prosecution."

Without overruling *Taylor*, we have gradually narrowed the exceptions. In *State v. Hampton*, 215 Kan. 907, 529 P.2d 127 (1974), we held evidence of prior similar offenses was admissible

to show intent in a forcible rape prosecution. *State v. Gonzales,* 217 Kan. 159, 535 P.2d 988 (1975), followed *Hampton.*

A few years later, in *State v. Fisher,* 222 Kan. 76, 563 P.2d 1012 (1977), we held in an indecent liberties with a child case that prior similar criminal acts are admissible under K.S.A. 60-455 to show intent. Indecent liberties with a child is a specific intent crime.

*State v. Crossman,* 229 Kan. 384, 624 P.2d 461 (1981), held that prior acts of illicit sexual relations between an adult and a child are admissible *independent* of K.S.A. 60-455 to establish the relationship of the parties' continuing course of conduct and to corroborate the testimony of the complainant. This case is significant to show we permit exceptions to the rule against non-admissibility other than the eight exceptions specifically listed in K.S.A. 60-455.

*State v. Cantrell,* 234 Kan. 426, 673 P.2d 1147 (1983), overruled both *Hampton* and *Gonzales* because those cases permitted evidence of prior sex crimes to be admitted to show "intent." This court held that rape is not a specific intent crime; therefore, evidence of intent need not be proved and the use of prior crimes to show intent is irrelevant. *Cantrell* is technically correct but illogical in its effect. (To illustrate, lewd and lascivious behavior [K.S.A. 1986 Supp. 21-3508(1)(b) and enticement of a child [K.S.A. 21-3509] are both specific intent crimes, thus prior commission of such crimes is admissible to show intent.)

We have our greatest difficulty with K.S.A. 60-455 in cases involving psychologically deviant sexual behavior, which includes child sexual abuse, incest, and forcible rape. Some types of child molestation, such as lewd and lascivious conduct and enticement, require a specific intent, while other types of the same criminal behavior involving sodomy and rape are not specific intent crimes. Thus, we admit evidence of prior similar offenses in some cases under the identity of intent and disallow it in other cases even though the same relevancy and materiality exists in each case. The difficulty lies more with semantics than substance.

While our previous definitions of "plan or scheme" do not fit the behavior of a person prone to commit compulsive, repetitive, sexually deviant crimes, I suggest that the term "method of operation" adopted in *State v. Taylor,* 198 Kan. 290, fits all of the

deviant cases equally. In the present case, Clements used the same method in the Alaska sodomy convictions as was used in this case. The evidence of the previous psychiatric deviation is relevant and material to show Clements is impelled by his uncontrolled sex drive to abuse children. A determination of mental illness such as homosexual pedophilia requires evidence of the offender's method of operation and sexual compulsion. Prior offenses evidencing these traits are essential for a jury to be rational factfinders. We have approved evidence of such traits independent of K.S.A. 60-455. I would hold Clements' prior convictions for sodomy and lewd acts involving five boys was properly admitted by the trial court.

There is a presumption of validity to the actions of a trial court and, even though the trial court has correctly ruled, but for the wrong reason, we are obligated to affirm. Here, the evidence of the prior similar crimes was technically not evidence of a plan as determined by the trial court, but it was evidence of pedophilia with its method of operation and sexual compulsion. Such evidence of mental illness is relevant and material to the issue on this case. It does not require foundation evidence other than proof of a prima facie case by the State showing the accused is a pedophile. Here, the State made a prima facie case. I would affirm the trial court.