No. 69,148

STATE OF KANSAS, *Appellee,* v. MITCHELL DAVIS, *Appellant.*
(874 P.2d 1156)

Opinion filed May 27, 1994.

*Benjamin C. Wood*, special appellate defender, of Olathe, argued the cause, and *Jessica R. Kunen*, chief appellate defender, of Topeka, was with him on the brief for appellant.

*Debra S. Byrd*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for the appellee.

The opinion of the court was delivered by

DAVIS, J.: The defendant, Mitchell Davis, was convicted after trial by jury of aggravated burglary, aggravated robbery, aggravated battery, attempted first-degree murder, and two counts of unlawful possession of a firearm. He was sentenced to a controlling term of 40 years to life imprisonment. The defendant contends: (1) He is entitled to a new trial because the State improperly commented on his failure to present evidence; (2) the trial court erred by denying his requested instruction that the jury may consider the witness' prior convictions for crimes involving dishonesty or false statement; and (3) there was insufficient evidence to support his convictions for unlawful possession of a firearm. Finding no reversible error, we affirm.

All charges arose out of two incidents. The first incident involved the defendant, an individual named Gerard Fields, and other (unnamed) individuals. This group went to the home of Michael Ballance to rob and kill him. The second incident occurred the next night, when the defendant allegedly shot and wounded Gerard Fields.

Based upon a relationship Ballance had with Fields' sister, Fields testified that he knew Ballance would have a lot of drugs and cash in his house. He planned to accompany the defendant to Ballance's home, rob him, and have the defendant kill Ballance.

Fields and other unidentified individuals rode in the defendant's car to Ballance's home. Ballance let them in when Fields identified himself. Fields introduced the defendant as his cousin and asked Ballance if he knew where they could get some marijuana. The defendant pulled a handgun, pointed it at Ballance's head, and told him to lie down on the floor. The defendant took $200 to $300 from Ballance's pouch. At some point, a third person entered the house carrying a shotgun. Ballance did not see his face. Later, a fourth man entered the house carrying what Ballance believed to be an Uzi.

Fields testified that he took a few things from Ballance's house and left. He then heard two shots and believed "[t]here was no need to ask" what had happened to Ballance. He met the defendant and the others at the car.

Ballance also testified about the night he was robbed. In pertinent part, his testimony corroborated Fields' testimony. He identified the defendant as the man who accompanied Fields. He testified that the defendant fired a shot at his (Ballance's) head before leaving the premises and that an unidentified man with a shotgun fired three shots at him.

The next day, someone left a message at Fields' sister's house that Ballance was not dead. Fields went to see the defendant to talk about what to do about it. The defendant told him, "Don't worry about it, tonight will be clean up night." Fields interpreted this comment to mean that the defendant was going to go back and kill Ballance.

Later that night, Fields met the defendant at Field's sister's house. According to Fields' testimony, they left together and

drove past Ballance's house. Ballance was not home, and the defendant began asking Fields about the best way to get in and out of another place that he was thinking about robbing. The defendant stopped the car, purportedly so that they could get out and see the other house the defendant wanted to rob. The defendant pointed out the house to Fields. As Fields was looking at it, the defendant said, "Hey, man, check this out. Your friend was easy to get and so are you." As Fields turned around, the defendant shot him twice, once in the wrist and once in the neck. When the defendant fired those shots he was almost close enough to touch Fields. Fields took four or five steps and then fell to the ground; the defendant ran away.

An ambulance was called and, after it arrived, the attendants asked Fields if he knew who shot him. Fields said he did not know. He later testified that he declined to identify his assailant because it was "the code of the neighborhood," and he did not realize he was paralyzed. Fields testified that his grandfather persuaded him to tell the truth about who shot him. As a result of the shooting, Fields is quadriplegic.

Based upon the events that occurred in Ballance's home, the State charged the defendant with aggravated burglary, aggravated robbery, aggravated battery, and unlawful possession of a firearm. The State also charged the defendant with attempted first-degree murder and unlawful possession of a firearm in the shooting of Gerard Fields. The defendant was convicted on all counts.

(1) Comment on the defendant's failure to present evidence:

The defendant called no witnesses in his case and did not testify. The defense counsel vigorously cross-examined the State's witnesses, defending on the basis that the State's witnesses were lying. After the defense counsel made his closing argument, the prosecuting attorney began her rebuttal with the following comment: "Couldn't do it, could he? Couldn't give you one bit of evidence throughout the course of this entire trial that would evidence—" The defense objected immediately, contending that it was not proper argument and noting that the defense is not required to produce any evidence. The court responded to the de-

fendant's objection by stating to the prosecuting attorney: "I don't know what you were getting at, but it sounded dangerously close to—" The prosecuting attorney then stated: "I—error on the part of an inexperienced prosecutor, Your Honor. Let me rephrase." This final comment by the prosecutor ended the matter. Nothing further was said by defense counsel, and the court was neither asked to nor did it give a cautionary instruction. The prosecutor continued with her argument but made no further comment concerning the defendant's failure to present evidence.

The defendant contends that he is entitled to a new trial because the prosecuting attorney improperly commented on his failure to testify or present evidence. In *Griffin v. California*, 380 U.S. 609, 615, 14 L. Ed. 2d 106, 85 S. Ct. 1229 (1965), the United States Supreme Court held that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." Kansas codified the *Griffin* rule in K.S.A. 60-439:

"If a privilege is exercised not to testify or to prevent another from testifying, either in the action or with respect to particular matters, or to refuse to disclose or to prevent another from disclosing any matter, the judge and counsel may not comment thereon, no presumption shall arise with respect to the exercise of the privilege, and the trier of fact may not draw any adverse inference therefrom. In those jury cases wherein the right to exercise a privilege, as herein provided, may be misunderstood and unfavorable inferences drawn by the trier of the fact, or may be impaired in the particular case, the court, at the request of the party exercising the privilege, may instruct the jury in support of such privilege."

We noted in *State v. Beebe*, 244 Kan. 48, 53, 766 P.2d 158 (1988), that any comment on the defendant's failure to testify is error "but is not per se reversible error." In order to constitute reversible error, the comments must be prejudicial as well as improper.

The State contends the comment of the prosecutor was not a comment upon the defendant's failure to testify. The defendant did not testify or offer any evidence. The prosecutor's comment made direct reference to the fact that the defendant could not "give [the jury] one bit of evidence" throughout the course of this entire trial. The statement could be perceived as a comment

upon the defendant's failure to testify. It also could be perceived as a comment on the defendant's failure to establish what he intimated in his opening statement—that the State's case rested entirely on the testimony of two "liars."

To the extent that the prosecutor's comment was directed at the defendant's failure to testify, it was improper and constituted trial error. However, the statement does not require reversal if it was harmless error. See, *e.g., State v. Hamilton*, 222 Kan. 341, 345, 564 P.2d 536 (1977). In order for a federal constitutional error to be considered harmless, this court must "be able to declare the error had little, if any, likelihood of having changed the result of the trial and . . . be able to declare such a belief beyond a reasonable doubt." *Hamilton*, 222 Kan. at 345. Accord *State v. Beebe*, 244 Kan. at 53; *State v. Bell*, 239 Kan. 229, Syl. ¶ 3, 718 P.2d 628 (1986).

In determining whether a prosecutor's improper comments amount to harmless error, our appellate courts consider the "nature and extent of the comment in comparison with the strength of the evidence of the defendant's guilt, and further consider whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the defendant to testify." *State v. Jagger*, 11 Kan. App. 2d 350, 351-52, 720 P.2d 673 (1986). The nature of the comment by the prosecutor, given the fact that the defendant presented no witnesses and did not himself testify, had the effect of violating *Griffin* and the provisions of K.S.A. 60-439. However, the comment was interrupted almost immediately by the defense counsel. In his objection, the defense counsel stated in front of the jury that the defendant has no burden to present any evidence. The court cautioned the prosecutor, and she apologized, citing her own inexperience as a prosecutor. These exchanges took place before the jury. We conclude based upon these brief exchanges that "the language used was [not] manifestly intended" to comment on the defendant's failure to testify. Moreover, the statement of the prosecutor was interrupted before she could indicate what evidence it was that the defendant failed to present. In fact, the State argues that the prosecutor was simply trying to rebut the defendant's trial contentions.

Several factors lead us to the conclusion that the State's comments had little, if any, likelihood of having changed the result of the trial. First, the language itself, while suggesting that the defendant offered no evidence, amounted to two lines in an extended record of trial, and the prosecutor was interrupted by an objection and was thus unable to complete her statement. The evidence in this case, while subject to a jury decision on credibility, included direct evidence by the victims that the defendant was the perpetrator.

We also find it significant that the court instructed the jury not to consider the fact that the defendant did not testify: "You should not consider the fact that the defendant did not testify in arriving at your verdict." In addition, the jury was instructed that it must assume that the defendant was not guilty and that the burden was upon the state to prove his guilt by evidence beyond a reasonable doubt: "The law places the burden upon the state to prove that Mitchell D. Davis is guilty. The law does not require Mitchell D. Davis to prove he is not guilty. Accordingly, you must assume Mitchell D. Davis is not guilty unless the evidence convinces you of Mitchell D. Davis' guilt."

Finally, the defendant immediately objected to the comment of the prosecutor, and the court interrupted the prosecutor, allowing no further comment on the subject. The defense counsel did not request a mistrial or limiting instruction. The court's comment, the prosecutor's apology, and the lack of further comment are factors we also consider. Perhaps it would have been better for the judge immediately and *sua sponte* to instruct the jury to disregard the comment and not to draw any inference from the defendant's failure to give or present evidence. Yet, we are called upon to determine whether this error requires reversal. Because the jury was properly instructed not to consider the defendant's failure to testify, and based upon the totality of the circumstances, we conclude beyond a reasonable doubt that the prosecutor's comment had little, if any, likelihood of having changed the result of the trial.

(2) Denial of the defendant's credibility instruction:

The defendant requested the following instruction at trial: "Evidence of the conviction of a witness for a crime involving dishonesty or false statement may be considered by you in evaluating the truthfulness or veracity of the witness's testimony in this case."

The court refused to give the instruction but instead instructed the jury on the standard PIK credibility instruction: "It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified." PIK Crim. 3d 52.09.

As a general rule, this court recommends that trial courts follow the PIK Committee's recommendations when instructing the jury. See *e.g.*, *State v. Pioletti*, 246 Kan. 49, 58-59, 785 P.2d 963 (1990). There are circumstances, however, in which it is appropriate for a trial court to depart from PIK:

"The pattern instructions have been developed by a knowledgeable committee to bring accuracy, clarity, and uniformity to jury instructions. They should be the starting point in the preparation of any set of jury instructions. If the particular facts in a given case require modification of the applicable pattern instruction or the addition of some instruction not included in PIK, the trial court should not hesitate to make such modification or addition. However, absent such need, PIK instructions and recommendations should be followed." *Pioletti*, 246 Kan. at 58-59.

Accord *State v. Dunn*, 249 Kan. 488, 492-93, 820 P.2d 412 (1991).

The evidence of the witnesses' criminal activity may be summarized as follows. Fields, the attempted murder victim, testified that he had two prior convictions for crimes involving dishonesty or false statement (forgery and aggravated robbery). He testified that he also had planned the robbery that gave rise to the other charges against Davis and had accompanied Davis and others to Ballance's home to commit the robbery and intended murder. There was no evidence of any conviction based on his involvement in those crimes. According to Fields, Ballance ran a crack house, which was why Fields believed he would be a good target for a robbery. There was no evidence that Ballance had any prior convictions arising out of his alleged drug activity or any other activity. Davis did not testify, but the State proved that he had a "prior

felony within 10 years of the occurrences here" to support the unlawful possession of a firearm charge.

The rules of evidence provide important guidance regarding what evidence the jury is allowed to consider in evaluating a witness' credibility. According to those rules, the jury could properly consider Fields' prior convictions in evaluating his credibility but not Davis' prior felony conviction or Ballance's alleged prior "bad acts."

Although worded in the converse, K.S.A. 60-421 indicates that evidence that a witness has been convicted of a crime involving dishonesty or false statement is admissible for the purpose of impairing that witness' credibility. It provides:

"Evidence of the conviction of a witness for a crime not involving dishonesty or false statement shall be inadmissible for the purpose of impairing his or her credibility. If the witness be the accused in a criminal proceeding, no evidence of his or her conviction of a crime shall be admissible for the sole purpose of impairing his or her credibility unless the witness has first introduced evidence admissible solely for the purpose of supporting his or her credibility."

Thus, it would have been proper for the jury to consider Fields' prior convictions for crimes involving dishonesty or false statement in evaluating his credibility. See *State v. Laughlin,* 216 Kan. 54, Syl. ¶ 1, 530 P.2d 1220 (1975) (cross examination of a defense witness concerning prior robbery conviction proper impeachment because robbery is a crime of dishonesty within the meaning of K.S.A. 60-421).

On the other hand, Davis did not testify, so evidence of his prior conviction would not be appropriate for impeachment purposes. See K.S.A. 60-421. Moreover, Davis' prior felony conviction was for possession of cocaine, which is not a crime involving dishonesty or false statement, rendering it inadmissible for impeachment purposes under K.S.A. 60-421. In addition, K.S.A. 60-422(c) and (d) render Davis' prior felony convictions inadmissible as character trait evidence. Thus, the jury could consider Davis' conviction only for the limited purpose of establishing an element of the offense of unlawful possession of a firearm.

Finally, there was no evidence that Ballance had any prior convictions, and there was only Fields' testimony that Ballance al-

legedly ran a crack house to indicate any alleged criminal activity on his part.

The trial court properly instructed the jury that it could consider Davis' prior felony conviction for the limited purpose of proving the unlawful possession of a firearm counts. The court also gave the accomplice testimony instruction, PIK Crim. 3d 52.18, presumably because Fields testified that he was an accomplice in the Ballance robbery; the general witness credibility instruction recommended in all criminal cases, PIK Crim. 3d 52.09, and the eyewitness identification instruction, PIK Crim. 3d 52.20.

As a general rule, the PIK Committee does not recommend expanding on the general witness credibility instruction and the committee notes explicitly state that it does not recommend giving a separate instruction on impeachment. See PIK Crim. 3d 52.09, Notes on Use; PIK Crim. 3d 52.15. This Court has held certain expansions on the general witness credibility instruction (PIK Crim. 3d 52.09) are not clearly erroneous when not objected to at trial. See *State v. Bodtke*, 241 Kan. 96, 100, 734 P.2d 1109 (1987); *State v. Clements*, 241 Kan. 77, 81-82, 734 P.2d 1096 (1987). In *State v. DeVries*, 13 Kan. App. 2d 609, 780 P.2d 1118 (1989), however, the Court of Appeals applied a different standard of review because there was an objection at trial, and the court held erroneous essentially the same language that was at issue in *Clements*. Compare *DeVries*, 13 Kan. App. 2d at 617-19, with *Clements*, 241 Kan. at 81-82. The expanded instruction at issue in *DeVries* read:

" 'It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified. You may take into account the ability and opportunity of the witness to observe and know the things about which that witness has testified; *i.e.*, memory, manner and conduct while testifying; any interest the witness may have in the outcome of this trial, and the reasonableness of testimony considered in the light of all evidence in this case.' " 13 Kan. App. 2d at 617.

DeVries was the only witness who testified for the defense, and he testified that he could not remember any of the events because of his alcohol abuse. The Court of Appeals held that the instruction was inappropriate "[b]ecause of the limited testimony and

the direct involvement of DeVries' 'memory.' " 13 Kan. App. 2d at 618. The court determined that "[t]he opportunity to mislead the jury or cause it to become unduly influenced by specific wording in an instruction which it has been told is 'the law that applies to this case' " required reversal. 13 Kan. App. 2d at 618-19.

Although the language at issue in *DeVries* is different from that at issue here, the potential problems are the same. If the jury is told that it is appropriate under the law to consider prior convictions for crimes involving dishonesty and false statement in evaluating Fields' credibility, it might unduly emphasize Fields' convictions. This court has held that "[i]nstructions should be general in nature and should not be argumentative or overemphasize one particular part of the case." *State v. Norris*, 244 Kan. 326, 338, 768 P.2d 296 (1989). It should be emphasized that the jury was able to consider the convictions under the general witness credibility instruction given.

The defendant relies on *Fudge v. City of Kansas City*, 239 Kan. 369, 376, 720 P.2d 1093 (1986), for the proposition that the requested instruction was required. His reliance is misplaced. In *Fudge*, we held that it was not error to refuse to give a similar instruction because the crimes involved were not crimes involving dishonesty or false statement. From *Fudge*, the defendant reasons that because the crimes at issue here did involve dishonesty or false statement, the instruction was required. Although we noted in *Fudge* that the prior convictions did not involve dishonesty or false statement, 239 Kan. at 376, that was not the only basis for our decision. The appellants in *Fudge* had sought the instruction because of a witness' alleged "extensive criminal record." The court noted that "[s]ince appellants made no effort to introduce evidence of [the witness'] 'extensive criminal record' they cannot complain of error on appeal." 239 Kan. at 376. Moreover, the witness' conviction of vehicular homicide, which was in evidence, could not have been used for impeachment purposes under K.S.A. 60-421. Our holding in *Fudge* does not require a finding that such an instruction is required in the case now before the court.

The defense counsel in the present case also noted during the instruction conference that many jurors indicated during voir dire

that they did not believe prior convictions were appropriate considerations in evaluating credibility. The voir dire was not transcribed, so there is nothing in the record to support this contention.

Although this case presents a somewhat unusual combination of evidence regarding prior convictions and alleged criminal activity, we must read the instructions as a whole and determine whether they "properly and fairly state the law as applied to the facts in the case, and if the jury could not reasonably have been misled by them." If so, "then the instructions do not constitute reversible error although they may be in some small way erroneous." *State v. Morris*, 244 Kan. 22, 23, 765 P.2d 1120 (1988). We conclude that the instructions, read together as a whole, properly and fairly state the law and that the jury could not have been misled by them. The court did not instruct the jury that it could not consider Fields' prior convictions, and it did instruct the jury that it should use common knowledge and experience in evaluating a witness' credibility. The court gave a proper limiting instruction regarding Davis' convictions. In *Norris*, 244 Kan. at 338, we said that instructions should not overemphasize certain evidence or be argumentative. In these circumstances, we hold that the trial court did not commit reversible error by failing to tell the jury how it could consider Fields' prior convictions.

(3) Sufficiency of evidence:

The defendant was charged with unlawful possession of a firearm contrary to K.S.A. 1991 Supp. 21-4204(1)(c), which prohibits "possession of any firearm by any person who, within the preceding 10 years, has been convicted of a crime to which this subsection (1)(c) applies, or has been released from imprisonment for such a crime, *and has not had the conviction of such crime expunged or been pardoned for such crime*." (Emphasis added.) The defendant contends that the State had the burden to prove that his conviction had not been expunged or that he had not been pardoned and that it failed to meet its burden.

The chief deputy of the criminal department of the district court clerk's office testified that she checked the defendant's file and found a record of a 1988 felony conviction and no record of

a pardon or expungement. She also found no record of a pardon or expungement in papers that had yet to be filed. On cross-examination, the defense counsel confirmed that K.S.A. 1991 Supp. 21-4619(d) requires that all petitions for expungement be filed in the original criminal action (*i.e.*, the file she reviewed to see if there was a record of expungement). There is no requirement, however, that pardons be recorded in the original district court file. K.S.A. 22-3701(3) requires written notice to the prosecuting attorney and the judge of the court in which the defendant was convicted and published notice in the county paper before the pardon or commutation of sentence is granted. K.S.A. 22-3703 requires the governor to give a list of all persons pardoned to the legislature at each regular session. The deputy clerk conceded that it was possible that a pardon could have been obtained and not appear in the file that she checked.

The State has the burden to prove the elements of the offense it charges. As the State notes, however, "the accused has the burden of introducing evidence as a matter of defense that he is within an exception or exemption in the statute creating the offense, where such exception or exemption is not part of the description of the offense." *State v. White*, 213 Kan. 276, 280, 515 P.2d 1081 (1973). Accord *State v. Braun*, 209 Kan. 181, 189-90, 495 P.2d 1000, *cert. denied* 409 U.S. 991 (1972); *State v. Miller*, 127 Kan. 487, 491, 274 Pac. 245 (1929).

*State v. White*, 213 Kan. 276, involved a charge of unlawful delivery of drugs in violation of K.S.A. 1971 Supp. 65-2602(1) (now repealed). That statute provided that "[i]t shall be unlawful (1) To deliver any drugs unless: (A) Such drug is delivered by a pharmacist . . . in good faith upon prescription." In *White*, we said

"The prohibited conduct is set forth in the phrase 'It shall be unlawful (1) To deliver any drugs . . . .' The remainder of the above quoted statute sets forth *an exception* to the first phrase, and was intended merely to take certain persons or acts out of the general prohibition set forth in the statute.

"The general rule has always been in Kansas that the accused has the burden of introducing evidence as a matter of defense that he is within an exception or exemption in the statute creating the offense, where such exception or exemption is not part of the description of the offense. (*State v. Braun*, 209 Kan.

181, 495 P.2d 1000 and *State v. Miller*, 127 Kan. 487, 274 Pac. 245.) Accordingly, the prosecution has no duty to prove on its case in chief that the accused is not within the exception. This is a mere rule of procedure and does not relieve the state of its burden of proving guilt. (See, *State v. Braun*, supra and cases cited therein.)" 213 Kan. at 280.

The language of K.S.A. 1991 Supp. 21-4204 (1)(c) is different from the statutes at issue in *White* in that it does not create an exception with the words "unless" or "except." Also, unlike the statutes in *Miller*, the statute we are concerned with does not set forth a separate provision stating that its prohibitions do not apply under certain circumstances. However, we conclude that there is no difference between a statute that provides it is unlawful to engage in certain conduct unless certain conditions are met (*e.g.*, the statute at issue in *White*) and the statute we examine here, which provides it is unlawful for a person with a particular prior conviction to possess a firearm if that person has not had the conviction expunged or been pardoned. Just like the language at issue in *White* and its predecessors, the language in K.S.A. 1991 Supp. 21-4204(1)(c) creates a condition that exempts a person from the prohibition in the statute. The specific language the legislature chose may be different, but to treat the statutes so differently as to shift the burden to come forward with evidence elevates form over substance. Requiring the State to prove that a conviction had not been expunged or the defendant had not been pardoned would require the State to prove a negative. See *White*, 213 Kan. at 280. The following language from K.S.A. 1991 Supp. 21-4204(1)(c)—"and has not had the conviction of such crime expunged or been pardoned for such crime"—does not constitute an element of the offense of unlawful possession of a firearm. The prosecution has no duty to prove in its case in chief that the accused's crime has not been expunged or the accused has not been pardoned. Once the State made a prima facie case, the defendant had the burden to introduce evidence that the conviction had been pardoned or expunged. The defendant made no such showing here; the State satisfied its burden of proof.

Affirmed.