NOT DESIGNATED FOR PUBLICATION

No. 127,119

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SHARON ROGERS and ROBERT ROGERS,
individually and as heirs-at-law of
Aryn Rogers, and as the Co-Administrators of the
ESTATE OF ARYN ROGERS,
*Appellants*,

v.

MATTHEW MOLL, M.D.,
*Appellee*.

MEMORANDUM OPINION

Appeal from Butler District Court; CHAD M. CRUM, judge. Oral argument heard April 8, 2025. Opinion filed August 22, 2025. Affirmed.

*Jakob J. Provo* and *James R. Howell*, of Prochaska, Howell & Prochaska, LLC, of Wichita, for appellant.

*Kaitlin M. Marsh-Blake*, *Bradley S. Russell*, and *Brian L. Burge*, of Sanders Warren & Russell LLP, of Overland Park, for appellee.

Before WARNER, C.J., ATCHESON and ISHERWOOD, JJ.

PER CURIAM: Sharon and Robert Rogers, as the legal representatives of their deceased adult daughter Aryn Rogers, have appealed a jury verdict for Dr. Matthew Moll in this medical malpractice action tried in Butler County District Court. They allege the jury instructions and verdict form rested on impermissibly flawed explanations of the key legal principles of fault and causation, thereby rendering the trial prejudicially unfair to

them. In deciding this sort of challenge, an appellate court reviews the instructions in their entirety to determine if they adequately informed the jury. Having done so here, we find that some of the Rogerses' criticisms of the instructions to be fair, and the instructions could have been better. But they and the verdict form were legally sufficient. We, therefore, affirm the verdict and resulting judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Because the points on appeal challenge legal aspects of the jury instructions and the verdict form, we offer a condensed factual and procedural history of the litigation for context. The parties, of course, are well versed in the details we have left unsaid.

Aryn was born with hydrocephalus, a chronic accumulation of spinal fluid around the brain. She also had some learning disabilities. Untreated hydrocephalus increases pressure on the brain ultimately causing a fatal neurological failure. Shortly after she was born, Aryn had a shunt surgically placed that drained the fluid from her brain into her abdomen. The shunt could fail and had to be replaced from time to time.

When she died, Aryn was 32 years old, lived at home, and worked in an unpaid job with a nonprofit organization. In February 2015, she experienced symptoms consistent with a shunt compromise and with other medical conditions. Her parents took her to an emergency room in El Dorado where Dr. Moll examined her. Robert Rogers informed Dr. Moll about Aryn's shunt. Based on a CT scan of Aryn's head and other diagnostic information, Dr. Moll considered a shunt compromise to be unlikely and looked for other causes of Aryn's symptoms. Her care was then shifted from Dr. Moll to a hospitalist who admitted her to the hospital for observation. Several hours later, Aryn was found unresponsive in her hospital room. Aryn was transferred to a larger Wichita hospital where she was declared brain dead two days later.

Robert and Sharon Rogers filed this medical malpractice action in January 2017 as Aryn's heirs-at-law and as the administrators of her estate. The jury heard evidence in a seven-day trial in September 2023. The way the parties framed the case for trial, Dr. Moll was the only named or phantom party to whom the jury could attribute fault for Aryn's death. The trial evidence included conflicting expert testimony on whether Dr. Moll's diagnosis and treatment of Aryn fell below recognized standards of care for emergency room physicians.

As is customary, the lawyers for each side submitted proposed jury instructions to the district court, and the district court fashioned the final instructions. See K.S.A. 60-251 (procedure for preparing jury instructions). Most of the instructions were standard directions to the jurors about how to conduct themselves and what to consider in assessing the trial evidence, and the Rogerses do not dispute those instructions on appeal. They focus on the contentions instruction that laid out their claims against Dr. Moll and his defenses to those claims and on the verdict form.

LEGAL ANALYSIS

On appeal, the Rogerses contend the instructions inadequately described fault and causation for the jury, depriving them of a fair trial. See *State v. Arreola*, 64 Kan. App. 2d 562, 576, 554 P.3d 684 (2024) (party "entitled to a fair trial, not a perfect one"); *A & J Home Repair v. Jones*, No. 125,547, 2023 WL 5993028, at *10 (Kan. App. 2023) (unpublished opinion) (same). They further contend those problems contributed to a confusing verdict form benefiting Dr. Moll. Essentially, the Rogerses submit the instructions and the verdict form were legally inappropriate. Their challenges pose questions of law, so we owe no particular deference to the district court's decision to give the instructions or to use the particular verdict form. *In re Care and Treatment of Quillen*, 312 Kan. 841, 849, 481 P.3d 791 (2021); *State v. King*, 297 Kan. 955, 979, 305 P.3d 641 (2013). As the parties appealing, the Rogerses bear the burden of establishing reversible error. *State v. Mendez*, 319 Kan. 718, 727-28, 559 P.3d 792 (2024).

3

A well-settled legal principle governs our review here: A set of jury instructions is not erroneous if taken as a whole it accurately states the governing law and adequately guides the jurors in how to conduct their deliberations. *Siruta v. Siruta*, 301 Kan. 757, 775, 348 P.3d 549 (2015); *Acord v. Porter*, 58 Kan. App. 2d 747, 776, 778, 475 P.3d 665 (2020). A corollary to that rule recognizes that a jury instruction is not erroneous simply because a better one could have been crafted. *State v. Ervin*, 320 Kan. 287, Syl. ¶ 4, 566 P.3d 481 (2025); *State v. Clark*, No. 117,951, 2019 WL 3210263, at *4 (Kan. App. 2019) (unpublished opinion); see *State v. Herbel*, 296 Kan. 1101, 1124, 299 P.3d 292 (2013).

Generally, district courts should use the PIK instructions because they have been drafted after careful study by a committee composed primarily of current or retired district and appellate court judges. See *Mendez*, 319 Kan. at 741; *State v. Dixon*, 289 Kan. 46, Syl. ¶ 10, 209 P.3d 675 (2009). But a district court may modify a standard instruction to account for unusual circumstances in a given case. 289 Kan. 46, Syl. ¶ 10.

We measure the jury instructions, at least in part, against the elements required to prove a medical malpractice claim. This court recently outlined those elements: "(1) the physician owed the patient a duty of care; (2) the physician's actions in caring for the patient fell below professionally recognized standards; (3) the patient suffered injury or harm; and (4) the injury or harm was proximately caused by the physician's deviation from the standard of care." *Miller v. Hutchinson Regional Med. Center*, 63 Kan. App. 2d 57, Syl. ¶ 1, 525 P.3d 10 (2023); see *Burnette v. Eubanks*, 308 Kan. 838, 842, 425 P.3d 343 (2018). The assessment has particular salience here because the Rogerses primarily argue the instructions failed to properly guide the jurors on the second element requiring fault, i.e., falling below a professional standard of care, and on the fourth element, i.e., causation.

Given our conclusion and the points the Rogerses have raised on appeal, we may most efficiently explain the result by looking at the instructions the district court

delivered to the jury. We turn to the contentions instruction first. See PIK Civ. 4th 106.01 (2018 Supp.). The instruction informs the jury of the claims or reasons the plaintiff says the defendant caused a compensable injury. And it outlines the defendant's defenses to those claims and any counterclaims they may have against the plaintiff. Here, Dr. Moll asserted no counterclaims.

The introductory language in the PIK contentions instruction informs the jury that plaintiffs claim they were "injured due to the defendant's fault in the following respects:". PIK Civ. 4th 106.01. The Rogerses' proposed instruction conformed to the standard language; Dr. Moll's proposed instruction did not. The district court used a modified version that informed the jurors that the Rogerses "claim that Defendant was at fault in one or more of the following respects:". The district court thus left out the phrase "due to" and altered the phrasing of "fault." The record fails to show why the district court chose the language it did.

The PIK contentions instruction introduces both causation and fault principles for the jury's consideration. The phrase "due to" ably captures legal causation in language accessible to lay jurors. See Webster's New World College Dictionary 450 (5th ed. 2018) (defining "due to" as meaning "caused by; resulting from"); Merriam-Webster's Collegiate Dictionary 386 (11th ed. 2020) (defining "due to" as meaning "as a result of"). The district court's rewording diluted a direct reference to causation in the opening of that instruction. But the reworded phrasing using "at fault" mitigated possible jury confusion. The common meaning of the phrase conveys blameworthiness for an error or mistake, thereby implicating a causative association between an act and a resulting harm. See Webster's New World College Dictionary 529 (5th ed. 2018) (defining "at fault" as meaning "guilty of error; deserving blame"); Merriam-Webster's Collegiate Dictionary 457 (11th ed. 2020) (defining "at fault" as meaning "open to blame : RESPONSIBLE"). Moreover, in outlining Dr. Moll's contentions, the district court informed the jury: "Defendant denies that he was negligent . . . or that he was at fault in causing or

5

contributing to [Aryn's] death." While stated in the converse as a denial, that contention directly refers to causation and links it to fault.

The Rogerses contend the district court compounded the problem by failing to include a definition of fault for the jury. In a separate instruction, the district court did define "negligence" for purposes of medical malpractice as "[a] violation" of "a duty to use the learning and skill ordinarily used by other members of that same field of medicine in the same or similar circumstances." But the district court did not include a freestanding definition regarding fault, although PIK Civ. 4th 105.01 (2020 Supp.) provides one. The standard instruction includes this language: "A party is at fault when he or she is negligent and that negligence caused or contributed to the event which brought about the claim(s) for damages." The contentions instruction outlining Dr. Moll's position picks up the gist of the fault concept in PIK Civ. 4th 105.01.[*]

[*]PIK Civ. 4th 105.01 is entitled "Comparative Fault Theory And Effect." The instruction describes for jurors how they should apportion fault among multiple named defendants and phantom parties that may be liable to the plaintiff and informs them of the legal effect of assigning 50 percent or more of the fault to the plaintiff. As we have explained, Dr. Moll was the only party who could be found at fault, so those portions of the instruction didn't apply here. But the instruction also includes a definition of fault that is relevant even if the jurors can assign fault to only one party.

In their proposed contentions instruction, the Rogerses asked the district court to instruct the jury that Dr. Moll had a duty to "provide safe and proper care to Aryn Rogers" and "his negligence caused and/or contributed to her prolonged pain, suffering[,] and anguish." The district court properly declined to use that language because it was inappropriately argumentative. See *Noel v. Pizza Management, Inc.*, 258 Kan. 3, 15, 899 P.2d 1013 (1995); *State v. Davis*, 255 Kan. 357, Syl. ¶ 6, 874 P.2d 1156 (1994). But the linkage between negligence and cause—reflected in the phrase "his negligence caused" in

6

their proposed instruction—presented an appropriate way of describing fault in a more direct way than the district court chose. Again, as we have explained, the instructions adequately conveyed the concept, especially through the phrase "at fault" at the start of the contentions instruction.

On balance, we are persuaded the jury instructions could have been improved by including both the phrase "due to" in the opening of the contentions instruction as used in PIK Civ. 4th 106.01 and the language discussing fault in PIK Civ. 4th 105.01. But we are equally persuaded the jury instructions did not mislead or confuse the jury about those concepts. The instructions included language phrased in ordinary words that sufficiently conveyed the governing principles in a way lay jurors would understand. See *Ervin*, 320 Kan. 287, Syl. ¶ 5 (district court "need not define widely used and readily understood terms in jury instructions"). In short, the instructions could have been more pointed and direct. But the improvements simply would have moved the instructions from legally adequate to something better. The jury instructions taken as a whole adequately stated the law. The Rogerses were not deprived of a fair trial because of the jury instructions.

The Rogerses have also challenged the verdict form as being legally inadequate. In their requested form, they wanted the district court to pose a single interrogatory on liability: "Do you find Dr. Moll to be at fault?" with blanks to be checked for "Yes" and "No." The district court instead used a verdict form with this question: "Do you find for the Plaintiffs or Defendant Dr. Moll? (Circle One)." Beneath the question, the form had a continuous line with "Plaintiffs" below and to the left of the line and with "Dr. Matthew Moll, M.D." below and to the right of the line with the word "or" between the two. The jury returned their verdict by circling Dr. Moll's name.

The jury instructions informed the jury about how to consider a damage award for the Rogerses, and the verdict form included places to record damages had the jury found for the Rogerses.

7

The Rogerses dispute the format of the liability portion of the verdict form and rely on K.S.A. 2024 Supp. 60-249(a), governing special verdicts. The statute permits a district court in a civil case to submit questions to the jury and to then use their answers to determine the ultimate verdict. The questions reflect the jury's factual-findings on specific and disputed liability issues, particularly with multiple claims and multiple parties. Here, the jury was asked to return a general verdict on liability for one side or the other—consistent with Dr. Moll being the only party to whom the jury could assign fault. The Rogerses' argument that using a general verdict created a categorial legal error fails. While K.S.A. 2024 Supp. 60-249 authorizes special verdicts, the statute plainly gives a district court discretion whether to use them. K.S.A. 2024 Supp. 60-249(a) ("The court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact."). The statute is permissive rather than mandatory. The district court acted within its authority to use a general verdict on liability.

The Rogerses also contend the phrase "find for" in the form was insufficiently exact to inform the jury how to enter a verdict for one side or the other given the ostensible shortcomings of the instructions. We are unpersuaded. The instructions sufficiently outlined the principles of liability and guided the jury in their application to identify the prevailing side. We do not repeat that explanation. Moreover, the two instructions on damages described what the jurors could award if "you find for" the Rogerses. So the jurors understood "finding for" the Rogerses entailed a liability finding against Dr. Moll and opened the door to monetary relief for the Rogerses. Conversely, they would understand that a "finding for" Dr. Moll would preclude any recovery. Finally, the phrase "find for" is not vague on its face, let alone inscrutable, and plainly means in favor of or to the benefit of. The jury would have understood as much.

The emotionally wrenching circumstances of Aryn Rogers' death cannot be understated. The jury heard exhaustive and often conflicting evidence about why Aryn died and whether she received appropriate medical care. The district court adequately

8

explained the necessary legal principles to the jury. On appeal, the Rogerses have not shown us the resulting verdict and judgment for Dr. Moll were so legally flawed as to require a new trial.

Affirmed.