No. 53,789

STATE OF KANSAS, *Appellee,* v. TRACY B. KORBEL, *Appellant.*

(647 P.2d 1301)

Opinion filed July 16, 1982.

*Dennis L. Phelps,* of Wichita, argued the cause and was on the brief for the appellant.

*Cris Senseman*, assistant district attorney, argued the cause, and *Robert T. Stephan*, attorney general, *Clark V. Owens*, district attorney, and *Jack Peggs*, assistant district attorney, were with her on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: Tracy B. Korbel appeals from a jury conviction of rape (K.S.A. 21-3502) and of aggravated kidnapping (K.S.A. 21-3421).

A young lady whom we will refer to as R was employed at K-Mart in Wichita. She got off work in the afternoon and was planning on a trip to Derby, Kansas, where her parents resided. As R proceeded to the parking lot to get her car she noticed a young man sitting on the curb in front of the store. She went to her car and while unlocking the car door she noticed the curb-sitter was standing a few feet from her. She entered the car and while fumbling through her purse for cigarettes the car door on the driver's side was opened. R noticed the curb-sitter had opened the car door and was holding a handgun which he pointed at her face. The man was later identified as Korbel.

Korbel pushed the car seat forward, entered the car and sat directly behind R. He directed her driving and threatened her with the gun. He said he was in the crime syndicate and killed people for a living. During the next few hours Korbel ordered four different stops, generally at abandoned farmhouses in south Sedgwick County. Each time they stopped he would take the car keys and the gun, and then he would inspect the area. At the fourth stop he ordered R to remove all her clothing. This stop may have been in Sumner County. R was having her menstrual period. After obtaining an erection Korbel inserted his penis in R's vagina. R indicated that Korbel was hurting her, whereupon Korbel quit and informed R he was a killer, not a rapist. Korbel got out of R's car at Caldwell, Kansas. R drove to Wellington and tried to phone her mother, was not successful, and then drove to Derby.

The Wichita police were called, made a report, and started an investigation by 11:00 p.m. that evening. Korbel was arrested two weeks later at Stillwater, Oklahoma. He was charged, tried and convicted. Korbel testified he attempted sexual intercourse, it was with the consent of R but that he stopped when she expressed pain.

Korbel was sentenced to life imprisonment for aggravated

kidnapping and to not less than five nor more than twenty years for rape. The sentences were made to run concurrently and the judge found a firearm was used and the mandatory sentencing act, K.S.A. 21-4618, applied. Seven issues are raised.

1. The first issue concerns the failure to instruct the jury on the lesser offense of attempted rape. Appellant Korbel argues there was some question in the evidence whether a rape was completed because he made no further advances when R expressed pain. Rape is defined by statute as follows:

"(1) Rape is the act of sexual intercourse committed by a man with a woman not his wife, and without her consent when committed under any of the following circumstances:

"(a) When a woman's resistance is overcome by force or fear." K.S.A. 21-3502.

"(1) 'Sexual intercourse' means any penetration of the female sex organ by the male sex organ." K.S.A. 21-3501.

Under these statutes the crime of rape may occur and be complete if there is any penetration, even though slight. *State v. Ragland,* 173 Kan. 265, 268, 246 P.2d 276 (1952). In the present case the victim testified there was penetration for a couple of minutes. The defendant testified at trial:

"Q. You don't deny having some sort of sexual activity with her, do you?
"A. No.
"Q. How far did your penis penetrate her vagina?
"A. I couldn't even tell it did, really, I — as soon as I started to put it in she said, 'Take it easy, it's hurting.' And that's when I withdrew.
"Q. There was a slight degree of penetration, but not very much?
"A. I guess there probably could have been.
"Q. Just enough to make it hurt, probably?
"A. Probably."

Under the testimony of both the accused and the victim there was the required penetration of the female sex organ by the male sex organ. This constituted sexual intercourse and it was proper to refuse an instruction on attempted rape.

2. The next issue raised concerns the refusal of the trial court to grant defendant's motion in limine. The victim testified of defendant's use of a firearm. Defendant testified he did not use a gun and that he did not even own a gun. The State had a witness available who would testify he was present when the defendant told of "taking his gun out and shooting it." Defendant moved to suppress this testimony on the ground it was hearsay. The evidence was admitted.

It is true the testimony was hearsay but it concerned a prior admission or statement made by the defendant, a party to the action. This testimony comes under the exception found in K.S.A. 60-460(*g*) as an admission by a party. 4 Vernon's Kansas Statutes Annotated § 60-460(g), p. 476.

It is generally agreed a protective order issued on a motion in limine should be granted only when the trial court finds two factors are present: (1) The material or evidence in question will be inadmissible at trial under the rules of evidence; and (2) the mere offer of the evidence or statements made during trial concerning the evidence will tend to prejudice the jury. *State v. Quick,* 226 Kan. 308, 311, 597 P.2d 1108 (1979).

The purpose of a motion in limine is to assure all parties a fair and impartial trial by prohibiting inadmissible and prejudicial evidence and improper questions by counsel. In the present case the testimony was admissible and in no way improper. The point is without merit.

3. Appellant raises an issue on appeal concerning the court's instructions regarding venue on the rape charge. There was evidence the act of sexual intercourse occurred in Sumner County. Appellant points to Instruction No. 12 which sets forth the elements necessary to prove the charge of rape. This instruction, in the concluding sentence, advised the jury that to establish the charge, the rape must have occurred "within this state." We note, however, that a more general Instruction No. 2 advised the jury: "It is incumbent upon the prosecution, before conviction can be had, to prove to your satisfaction that the crime alleged in the Complaint/Information has been committed in Sedgwick County, Kansas."

In the present case one element of the crime of rape is overcoming the woman's resistance by force or fear. This act first occurred in Sedgwick County even though the sexual intercourse may have been committed in Sumner County. When two or more acts are requisite to the commission of any crime and such acts occur in different counties, the prosecution may be in any county in which any of such acts occur. K.S.A. 22-2603; *State v. Zimmer,* 198 Kan. 479, 498-99, 426 P.2d 267, *cert. denied* 389 U.S. 933 (1967). Venue was properly laid in Sedgwick County.

4. The omission of Sedgwick County from the element instruction, although irregular, is not erroneous as a matter of law.

The appellant failed to object to Instruction No. 14 in the trial court. K.S.A. 22-3414(3) provides in pertinent part:

"No party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he objects and the grounds of his objection unless the instruction is clearly erroneous."

The instruction not being objected to in the trial court, any error is waived and no error on appeal may be predicated thereon.

5. Appellant challenges Instruction No. 12 on the theory that the words "if you cannot agree" coerced the jury into returning a verdict of guilty on aggravated kidnapping. We do not agree. This instruction reads:

"The offense of Aggravated Kidnapping with which the defendant is charged includes the lesser offense of Kidnapping. If you find the defendant guilty of Aggravated Kidnapping then you need not consider the lesser offense; however, *if you cannot agree* that the defendant is guilty of Aggravated Kidnapping you shall consider if he is guilty of Kidnapping.

"To establish this charge of Kidnapping the following claims must be proved:

"1. That the defendant took [R] . . . by force or threat;

"2. That it was done with the intent to hold [R] . . . to facilitate the commission of the crime of Rape; and,

"3. That this act occurred on or about the 14th day of January, 1981, in Sedgwick County, Kansas.

"When there is reasonable doubt as to which of two offenses defendant is guilty, he may be convicted of the lesser offense only." Emphasis supplied.

It is clear from a literal reading of the instruction it has no such effect as attributed to it by appellant. The words "if you cannot agree" when used to preface an instruction on a lesser charge are not coercive and do not require the members of a jury to unanimously find the accused innocent of the greater charge before proceeding to consider a lesser charge. The words "if you cannot agree" presuppose less than a unanimous decision and no inference arises that an acquittal of the greater charge is required before considering the lesser.

The cases from the State of Michigan on which appellant relies are not in point for the instructions in the Michigan cases did require unanimity and required a finding of not guilty on the principal charge before allowing deliberation on lesser charges.

6. Appellant makes a general challenge to Instructions 10 through 14 saying they were suggestive of a guilty verdict because they were improperly arranged, hard to read, and not in logical order. (We note in passing that appellant's brief is hard to

read or follow because he has failed to index and give the pages on which the particular issues appear in his brief. See Rules of the Supreme Court, Rule No. 6.02 [a] [228 Kan. xlvi].)

However, the propriety of the instructions to the jury is to be gauged by consideration of the whole, each instruction to be considered in conjunction with all other instructions in the case. *State v. Childers,* 222 Kan. 32, Syl. ¶ 5, 563 P.2d 999 (1977). See also *State v. Ferguson, Washington & Tucker,* 228 Kan. 522, Syl. ¶ 2, 618 P.2d 1186 (1980). The objection to the propriety of these instructions is made for the first time on appeal and error was, therefore, waived in the trial court since they are not erroneous as a matter of law.

7. The final issue raised by the appellant concerns the failure of the trial court to order a presentence investigation. The legislature in passing the laws regarding sentencing expressed the following philosophy applicable to sentencing:

"This article shall be liberally construed to the end that persons convicted of crime shall be dealt with in accordance with their individual characteristics, circumstances, needs, and potentialities as revealed by case studies; that dangerous offenders shall be correctively treated in custody for long terms as needed; and that other offenders shall be dealt with by probation, suspended sentence, or fine whenever such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the offender, or shall be committed for at least a minimum term within the limits provided by law." K.S.A. 21-4601.

## K.S.A. 21-4604 provides:

"(1) . . . Whenever a defendant is convicted of a felony, the court *shall require* that a presentence investigation be conducted by a probation officer or in accordance with K.S.A. 21-4603, unless the court finds that adequate and current information is available in a previous presentence investigation report or from other sources." Emphasis supplied.

## K.S.A. 21-4603 in part provides:

"(1) Whenever any person has been found guilty of a crime and the court finds that an adequate presentence investigation cannot be conducted by resources available within the judicial district, including mental health centers and mental health clinics, the court may require that a presentence investigation be conducted by the Kansas state reception and diagnostic center or by the state security hospital."

## Just prior to sentencing the trial court in this case stated:

"[T]here is no need for a presentence investigation in this case. I don't think I made a record of that when the jury's verdict came in, and I will do so at this time. I find it to be ludicrous to ask somebody to do a presentence investigation when I

have no choice, when I know there's a firearm involved and the penalty involved is life imprisonment."

The trial court is correct in its assessment that in this particular case the sentence was mandatory and the court had little, if any choice as to the length of sentence, except perhaps as to running the two sentences concurrently or consecutively. However, what the court overlooks is the additional purposes the presentence report is designed to serve. The information compiled is not only to assist the sentencing court but also to help the Department of Corrections when the offender is sentenced to the custody of the Secretary of Corrections. The investigation and report provide both the court and the department with needed information concerning the offender's background, social history, past criminal activities, if any, medical and psychological data, and other relevant factors which may be used to effect a knowledgeable disposition of the case or to develop a suitable program of treatment, rehabilitation, and incarceration for the offender. See Report on Kansas Legislative Interim Studies to the 1978 Legislature, p. 52 (Feb. 1978).

The American Bar Association project on Standards for Criminal Justice recommends that a presentence investigation report be made in every case. ABA Standards Relating to Sentencing Alternatives & Procedures §§ 4.1, 4.3 (Approved Draft 1968).

K.S.A. 21-4605(2) provides that if the defendant is committed to the custody of the Secretary of Corrections all presentence reports shall be sent to the Secretary of Corrections and to the director of the state correctional institution to which the defendant is conveyed.

The requirement of the statute is mandatory. K.S.A. 21-4604(1) states that whenever a defendant is convicted of a felony, the court shall require that a presentence investigation be conducted, unless the court finds that adequate and current information is available in a previous presentence investigation report or from other sources.

In the present case the trial court did not find on the record that adequate and current information was available. It did not find the information was available from other sources. Therefore, the court erred in failing or refusing to require presentence reports.

However, we do not believe the error was prejudicial to the defendant. Any information obtained could not have affected the

length of this sentence under the mandatory firearms act. The court did run the sentences concurrently. The only possible prejudice to the defendant, who was sentenced to the custody of the Secretary of Corrections, would be from the lack of information as to defendant's background, social history, and other relevant factors which might help to develop a suitable program of treatment, rehabilitation or incarceration for the offender.

K.S.A. 1981 Supp. 75-5262 provides:

"(a) The primary function and purpose of the Kansas state reception and diagnostic center shall be to provide a thorough and scientific examination and study of all felony offenders of the male sex sentenced by the courts of this state to the custody of the secretary of corrections so that each such offender may be assigned to a state correctional institution having the type of security (maximum, medium or minimum) and programs of education, employment or treatment designed to accomplish a maximum of rehabilitation for such offender. All such offenders shall be delivered to said center as provided in K.S.A. 1978 Supp. 75-5220, upon being sentenced by the court.

"(b) Each inmate so delivered to the Kansas state reception and diagnostic center shall be examined and studied and shall have a rehabilitation program planned and recommended for him. An inmate shall be held at the Kansas state reception and diagnostic center for a period not exceeding sixty (60) days except that an inmate may be held for a longer period of time at said center on order of the secretary. Upon the completion of the case study, diagnosis and report on an inmate, the inmate shall be assigned to one of the state correctional institutions or facilities for confinement, which shall be selected as the secretary shall prescribe, based on the examination and study of the inmate, or the inmate may be paroled or he may be assigned to one of the state hospitals for further treatment not exceeding sixty (60) days where an ultimate parole is indicated at the expiration of said additional time."

Since in this case the defendant did come within the provisions of the above statute and all reports and studies of the Kansas State Reception and Diagnostic Center were available to the Secretary of Corrections they would adequately serve the purposes normally served by a presentence report. No prejudicial error occurred under the circumstances of this case.

Judgment affirmed.