No. 90,571

STATE OF KANSAS, *Appellee*, v. NATHENIAL T. HURT, *Appellant*.

(101 P.3d 1249)

Opinion filed December 17, 2004.

*Nathan B. Webb*, assistant appellate defender, argued the cause and was on the brief for appellant.

*Kristi L. Barton*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Phill Kline*, attorney general, were with her on the brief for appellee.

The opinion was delivered by

LUCKERT, J.: A jury convicted Nathenial Hurt of first-degree premeditated murder and aggravated assault arising out of the shooting death of his former girlfriend. The trial court sentenced Hurt to a hard 50 life sentence for the first-degree murder conviction. Hurt appeals his convictions and sentence, arguing: (1) he was denied a fair trial because of statements made by the prosecutor during closing arguments, (2) the trial court erred in imposing an unconstitutional hard 50 sentence, and (3) the evidence was not sufficient to support his conviction for aggravated assault.

On October 4, 2002, Hurt shot and killed Nicole Palma in front of her home. According to Hurt, he and Palma were involved in an exclusive relationship, and when Hurt discovered that Palma and Hurt's "cousin," Marvell Hill, were engaging in a secret sexual relationship, Hurt "just lost it." While Hurt contended the killing was committed in the heat of passion and was merely voluntary manslaughter, the State charged Hurt with premeditated first-degree murder.

The State introduced evidence that Hurt and Palma had a troubled relationship. On September 20, 2002, Palma reported a domestic violence incident involving Hurt. Palma reported that she had gone to the hospital accompanied by Hurt. When Hurt learned that Palma had a sexually transmitted disease, she and Hurt argued and Hurt had to be escorted out of the hospital by security. Several hours later, as Palma was driving home from the hospital, Hurt called her on her cell phone and said, "You're gonna regret this, you're gonna make me do something that I'm gonna regret." As Palma neared her home, she saw Hurt running toward her vehicle. Hurt threw a rock or brick through the driver's side window breaking the window and the windshield.

On October 3, 2002, a detective called Palma to verify some of the information in the report. The detective also spoke with Hurt by telephone and explained to him there was a warrant for his arrest based on the incident.

The next morning, Hurt called his employer at 7:30 a.m. and said he would not be coming to work because he had "some personal business to attend to." Hurt sounded upset and said he might need to come in and talk later.

The same morning, Marvell Hill was visiting Palma at her home. Hill testified Hurt was "like family" to him and he called Hurt his cousin even though they were not related by blood. Hill admitted that he and Palma had been involved in a sexual relationship. Although Hurt had previously asked both Hill and Palma whether anything was going on between them, both had denied any relationship.

Hill testified that, on the morning of the shooting, Palma received several telephone calls from Hurt who was "talking crazy."

Hill asked Palma for a ride to work and they walked outside and got into Palma's Suburban. Before Palma could start the Suburban, Hurt ran up to the vehicle and began banging on her door. When Palma opened the door, Hurt pulled her out and placed her between the door and the floor of the vehicle with his knee on her chest. Hurt pulled a gun from his waistband, pointed it at Palma, and said, "You fucking my cousin." Hurt then pointed the gun at Hill who said, "You gonna do this over a girl, over a chick."

As Hurt began dragging Palma around the back of the Suburban to the passenger side, Hill got out and maneuvered around the front of the vehicle to the driver's side. When Hurt again pointed the gun at Hill, Hill began running in a zigzag pattern. Hill heard gunshots, one of which hit dirt that splashed into his face. As he was running, Hill turned back and saw Hurt shoot Palma while she knelt on the ground.

Several of Palma's neighbors witnessed the shooting. One neighbor saw a man run away from the scene and get into a maroon car that was parked around the corner. Several of the neighbors testified that they were familiar with Hurt and that he usually drove a white Chevy to Palma's house, parking it either on the street or in the driveway.

Hurt testified in his own defense. He claimed that, at the time of the shooting, he and Palma were involved in an exclusive relationship. According to Hurt, on the morning of the shooting, he had called Palma and asked her to drive him to Mississippi to visit his children. Palma agreed, but her vehicle needed some maintenance before making the trip. Hurt drove his white Chevy to Palma's house, planning to take the Suburban for repairs, and took his gun with him because he and Palma were planning to travel.

When Hurt called Palma on her cell phone to tell her he was on his way, she claimed she was not at home. However, as Hurt was driving by, he saw Palma's Suburban in her driveway so he stopped and walked up to her house. As he approached, Hurt saw Palma standing in the doorway with Hill; she appeared to be wearing a T-shirt and nothing else. Hill had previously testified Palma was wearing boxer shorts that were so short they might not have been visible under her T-shirt. Hurt testified, "[A]fter seeing that, I just

lost it. It was like they was messing around and it hurted. You know, it was like my heart was just ripped out. And I just don't remember if I did anything to her or him. Only thing I remember was going home."

Hurt was charged with premeditated first-degree murder, aggravated assault, and criminal possession of a firearm. The State later amended the complaint to include attempted first-degree murder as an alternative to the aggravated assault charge. Hurt pled guilty to the firearm charge prior to trial. The jury convicted Hurt of premeditated first-degree murder and aggravated assault. The trial court sentenced Hurt to a hard 50 term for the first-degree murder based upon the aggravating factors that Hurt had a prior aggravated battery conviction and that he had caused a risk of death to more than one person. The court also sentenced Hurt to 24 months' imprisonment for the aggravated assault conviction and 8 months' imprisonment for the firearm conviction, ordering both of those sentences to run consecutive to one another and the hard 50 term.

### *Was Hurt Denied a Fair Trial by Prosecutorial Misconduct During Closing Argument?*

Hurt isolates several statements in the prosecutor's closing argument which he argues misstated the law, denied him a fair trial, and require reversal of his conviction for first-degree murder. Hurt argues that the prosecutor misled the jury to believe that Hurt's intent at the time of the shooting was irrelevant if Hurt had premeditated the killing at any point in the past. He also argues that in another portion of the closing argument the prosecutor made several misstatements of law regarding the manner and order in which the jury should consider the lesser included homicide offenses.

To establish reversible error based on prosecutorial misconduct, a defendant must show the alleged error denied the defendant his or her right to a fair trial under the Fourteenth Amendment. *State v. Davis*, 275 Kan. 107, 121-22, 61 P.3d 701 (2003).

The framework for our review of the prosecutor's statements was recently reiterated and clarified in *State v. Tosh*, 278 Kan. 83, 85, 91 P.3d 1204 (2004):

"A two-step analysis is applied to allegations of prosecutorial misconduct. First, the court decides whether the prosecutor's comments were outside the wide latitude allowed in discussing the evidence. Second, the court must decide whether the comments constitute plain error, that is, whether the statements are so gross and flagrant as to prejudice the jury against the defendant and deny him or her a fair trial, thereby requiring reversal."

Although the first prong of this analysis has been phrased as relating to a prosecutor's comments "in discussing the evidence," this two-step analysis has been applied when considering a prosecutor's statements regarding the law and statements about the application of the law to evidence. See, *e.g.*, *Tosh*, 278 Kan. at 90-91; *State v. Hebert*, 277 Kan. 61, 82, 82 P.3d 470 (2004).

Thus, we must first consider whether, as Hurt argues, the prosecutor misstated the law in discussing intent and the order and manner of the jury's consideration of lesser included offenses. In the portion of the argument regarding Hurt's intent with which Hurt now takes issue, the prosecutor stated:

"If I call in sick tomorrow 'cause I wanna go watch a ballgame or do something and I wake up tomorrow morning, in fact I am sick, I really do feel bad, I can say, Well, you know, I had something, I didn't—really was gonna lie to my boss but turned out I really was sick. Well, doesn't really change the fact that I did have it in my heart and my mind to lie to my boss. The fact that I really did get sick later doesn't obviate that.

"The defendant was going over there to kill her. The fact that Marvell Hill happened to be there doesn't change anything. It was just icing on the cake for him. But he was going over there to kill her. And for him now to say, well, yeah, okay, but Marvell was there, it changes everything. It changes nothing. His intent that morning was to kill her. It's clear from all the facts in the case. Every act—action he took that day, that morning, and in the weeks preceding tells you that."

Hurt contends that the prosecutor misstated the law by implying that his intent at the moment of the killing was irrelevant, contrary to Kansas law as stated in *State v. McClanahan*, 254 Kan. 104, 114, 865 P.2d 1021 (1993) (to establish heat of passion, defendant's emotional state must exist at time of act). Essentially, Hurt's argument is that, even if he went to Palma's house with the premeditated intent to kill her, when he arrived there he found Palma with Hill, flew into a rage, and was sufficiently provoked to kill Palma on impulse. According to Hurt, those intervening facts negated any

earlier premeditated intent and reduced the crime to voluntary manslaughter. Hurt contends that the prosecutor's argument assumed that Hurt would have carried out the shooting even absent provocation, negates any possibility of abandoned intent, and thereby implies that, no matter what Hurt's actual intent at the time of the shooting, if he had ever had the premeditated intent to kill Palma, he was guilty of first-degree murder.

Hurt's argument, which is based on the concept of temporal concurrence, or the idea that the intent must exist at the same time as the act, is technically correct. See 1 LaFave, Substantive Criminal Law § 6.3(a), p. 453 (2d ed. 2003). If the killing of Palma was actuated by heat of passion and not Hurt's premeditated intent to kill, then Hurt is guilty only of voluntary manslaughter.

However, Hurt's interpretation of the prosecutor's statement is too broad. The State persuasively argues that the prosecutor's statements were fair comment on the evidence. According to the State, the prosecutor was merely arguing that the jury should find that evidence of premeditation outweighed evidence of provocation. Contrary to Hurt's suggestion that the prosecutor implied that Hurt's intent at the time he killed Palma was irrelevant, the prosecutor's argument was that "[h]is intent that morning was to kill her." A more reasonable interpretation of the prosecutor's statements is that Hurt was simply using Hill's presence as an excuse to carry out his previously formed intent to kill Palma. In that context, the prosecutor's statements were fair comment on the evidence presented and were proper.

In the other portion of the closing argument about which Hurt now complains, the prosecutor stated:

"If you're not convinced—first of all, if you are convinced that he's guilty of first-degree premeditated murder, check the guilty box, and you're done with that count. 'Cause, if you're convinced that he's guilty of that highest count, you need not go down any further to consider second-degree or voluntary.

"It's only if you're not convinced, all 12 of ya, that he's guilty of premeditated, and then you move your way down and ask yourself, Well, certainly, he intended to but maybe it wasn't premeditated. Again, read that definition of premeditation to yourselves and ask yourself, how can there [have] been any dispute that this was premeditated.

"Finally, if you're not convinced that this was a premeditated or even an intentional second-degree murder, then you're required to consider voluntary manslaughter."

Hurt contends these comments are inconsistent with Kansas law, citing *State v. Korbel*, 231 Kan. 657, 647 P.2d 1301 (1982). In *Korbel*, the defendant challenged the method of considering lesser included offenses provided for by the pattern jury instructions (PIK). In affirming the PIK method, the court stated:

"The words 'if you cannot agree' when used to preface an instruction on a lesser charge are not coercive and do not require the members of a jury to unanimously find the accused innocent of the greater charge before proceeding to consider a lesser charge. The words 'if you cannot agree' presuppose less than a unanimous decision and no inference arises that an acquittal of the greater charge is required before considering the lesser." 231 Kan. at 661.

Hurt's argument on this point simply lacks merit. The prosecutor's statement, "if you're not convinced," is not significantly different from the previously approved language, "if you cannot agree."

Additionally, at oral argument, defense counsel stressed that the phrase "all 12 of ya" was improper in the context of the prosecutor's statement "[i]t's only if you're not convinced, all 12 of ya, that he's guilty of premeditated, and then you move your way down. . . . " Hurt contends this statement by the prosecutor improperly requires the jury to reach a unanimous acquittal on first-degree murder before the jury could consider the lesser included offenses of intentional second-degree murder and involuntary manslaughter. K.S.A. 21-3109 states: "When there is a reasonable doubt as to which of two or more degrees of an offense [the defendant] is guilty, [the defendant] may be convicted of the lowest degree only." Thus, it would be improper to state that all 12 jurors had to agree that there was a reasonable doubt before the jury could consider a lesser included offense. It is not clear that this was the meaning conveyed by the prosecutor's statement. However, the remark is ambiguous and at least potentially subject to this interpretation.

Hurt also cites *State v. Graham*, 275 Kan. 831, 69 P.3d 563 (2003). In *Graham*, the defendant was charged with attempted

first-degree murder and the jury was instructed on attempted second-degree murder and attempted voluntary manslaughter as lesser included offenses. The jury convicted the defendant of attempted second-degree murder. However, the jury was improperly instructed that it should only consider the lesser included offense of attempted voluntary manslaughter if it did not find the defendant guilty of attempted second-degree murder. This court held:

"Where there is evidence of mitigating circumstances of sudden quarrel or heat of passion justifying an instruction on voluntary manslaughter in a case where voluntary manslaughter is a lesser included offense, the failure to instruct the jury to consider such circumstances, consistent with PIK Crim. 3d 56.05B, in its determination of whether the defendant is guilty of second-degree murder, is always error and in most cases presents a case of clear error." 275 Kan. 831, Syl. ¶ 4.

Hurt claims it was contrary to *Graham* to inform the jury it could not even consider his heat of passion defense unless it did not agree he was guilty of premeditated first-degree murder. That was not the holding of *Graham*. In the context of voluntary manslaughter and second-degree murder, the issue of ordering the jury's deliberation arises because an intentional homicide is reduced from murder to voluntary manslaughter if it is committed upon a sudden quarrel or in the heat of passion. *State v. Winters*, 276 Kan. 34, 40, 72 P.3d 564 (2003).

The same is not true of premeditated first-degree murder. Premeditation and heat of passion are mutually exclusive concepts. In other words, if a murder was premeditated, it cannot have been the result of heat of passion. See *State v. Abu-Fakher*, 274 Kan. 584, 609, 56 P.3d 166 (2002) (finding of premeditation is inapposite to mitigating circumstances of heat of passion and sudden quarrel). Thus, there is no need for the jury to consider evidence of heat of passion at the same time it considers evidence of premeditation.

However, the prosecutor also included intentional second-degree murder, stating: "Finally, if you're not convinced that this was a premeditated or even an intentional second-degree murder, then you're required to consider voluntary manslaughter." Under *Graham*, the inclusion of intentional second-degree murder in this sentence was improper since second-degree murder and voluntary manslaughter require simultaneous deliberation when there is ev-

idence of mitigating circumstances of sudden quarrel or heat of passion justifying an instruction on voluntary manslaughter.

Therefore, while all of the statements about which Hurt complains were not improper, it was improper for the prosecutor to state that voluntary manslaughter should be considered only if the jury was not convinced there was an intentional second-degree murder. Accepting Hurt's interpretation of the remark "[i]t's only if you're not convinced, all 12 of ya," it was also improper for the prosecutor to state that there must be a unanimous acquittal before considering the lesser included offenses. Therefore, we must consider the second step of the analysis applied to allegations of prosecutorial misconduct and determine whether the remarks constitute harmless or prejudicial error. In *Tosh*, we explained this analysis.

"The Court of Appeals quoted the following passage from *State v. Jones*, 273 Kan. 756, 782, 47 P.3d 783, *cert. denied* 537 U.S. 980 (2002):

'The appellate court considers three factors to determine whether a new trial should be granted because of prosecutorial misconduct: (1) whether the misconduct is so gross and flagrant as to deny the accused a fair trial; (2) whether the remarks show ill will on the prosecutor's part; and (3) whether the evidence against the defendant is of such a direct and overwhelming nature that the misconduct would likely have little weight in the minds of the jurors. [Citation omitted.]'

"Obviously, the first of these three factors merely repeats in part the statement of the ultimate second step of the analysis: 'Whether the misconduct was so gross and flagrant that it denied the defendant a fair trial.' Thus, the second step of the analysis is essentially directed to whether the misconduct is so prejudicial that it denies the defendant a fair trial. This analysis requires a particularized harmlessness inquiry utilizing the three factors set out in *Jones*.

"With this clarification of the two-step analysis, then the question of whether the prosecutor's behavior was gross and flagrant can occupy a sensible and appropriate place in our analysis as the first of three factors to be considered in the harmlessness inquiry. None of these three factors is individually controlling. Further, it is important that the character of the three factors ensures that our harmlessness inquiry in the unique setting of prosecutorial misconduct will be both practical and punitive, as it should be. Prosecutorial misconduct not only injects error into a criminal trial. It violates the prosecutor's ethical obligations. But we recognize that there are degrees of seriousness in such misbehavior, and our appellate courts must have the freedom to consider those degrees and their likely effects as they decide whether the misbehavior before them in a given case merits reversal and remand for new trial." 278 Kan. at 93-94.

Thus, we first consider whether the prosecutor's comments were so gross and flagrant as to deny Hurt a fair trial. The statement that "[i]t's only if you're not convinced, all 12 of ya, that he's guilty of premeditated, and then you move your way down" is correct if intended as a statement that all 12 jurors must agree to convict of first-degree murder and, in light of the statements which preceded the offending language, it appears this is the context in which the prosecutor intended the comment. As we have noted, even when read in a transcript, the statements are difficult to follow and the improprieties about which Hurt complains are less than clear. The mistake appears to be one of twisted syntax. The second improper statement regarding the order of consideration of second-degree murder and voluntary manslaughter is clearer, but was not a point of emphasis by the prosecutor. Thus, we conclude that neither statement was gross or flagrant.

With regard to the second factor of whether there was ill will on the part of the prosecutor, there was no indication that the prosecutor purposefully misstated the law or in any other way acted with ill will.

Finally, we consider whether it is likely that the misconduct would have weight in the minds of the jury. In making this inquiry, "the prosecutor's misstatement of the law must be considered in the context of the jury instructions given by the trial court." *State v. Henry*, 273 Kan. 608, 620, 44 P.3d 466 (2002); see *Hebert*, 277 Kan. at 82-85 (summarizing other cases). In this case, the jury instructions correctly informed the jury on the method of considering lesser included offenses. The jury was properly instructed consistent with PIK Crim. 3d 56.05(B) that it should consider second-degree murder and voluntary manslaughter at the same time. The jury was instructed on the charged offense of premeditated first-degree murder and the lesser included offenses of intentional second-degree murder and voluntary manslaughter. The second-degree murder instruction stated: "If you do not agree that Mr. Hurt is guilty of premeditated murder, you should then consider the lesser included offense of murder in the second degree." The voluntary manslaughter instruction stated: "In determining whether Mr. Hurt is guilty of murder in the second degree, you

should also consider the lesser included offense of voluntary manslaughter." The jury was also instructed consistent with PIK Crim. 3d 68.09 that if there was a reasonable doubt as to which of two or more offenses Hurt was guilty, it could convict him of the lesser included offense only.

Additionally, the fact that the jury convicted Hurt of premeditated first-degree murder shows that any error in the prosecutor's statement was harmless. See *State v. Horn*, 278 Kan. 24, Syl. ¶ 8, 91 P.3d 517 (2004). In *Horn*, this court held that when a lesser included offense is the subject of instruction, and the jury convicts of the greater offense, any error resulting from the failure to give an instruction on another still lesser included offense is not reversible error. By analogy, where a lesser included offense was the subject of an instruction (second-degree murder), and the jury convicted Hurt of the greater offense (first-degree murder), any error in the ordering of still lesser included offense instructions (voluntary manslaughter) was also harmless error.

Consequently, we hold that any error in the prosecutor's arguments was harmless under both K.S.A. 60-261 and under the federal harmless error rule declared in *Chapman v. California*, 386 U.S. 18, 22, 17 L. Ed. 2d 705, 87 S. Ct. 824 (1967). See *Tosh*, 278 Kan. at 96-97.

*Is Kansas' Hard 50 Sentencing Scheme Unconsititutional
Because it Allows a Defendant's Sentence to be
Increased Beyond the Maximum Penalty Based
Upon Facts Not Proven to a Jury Beyond a Reasonable Doubt?*

Hurt argues that Kansas' hard 50 sentencing scheme is unconstitutional because it does not afford criminal defendants their right to have a jury determine beyond a reasonable doubt all facts which might increase the maximum penalty for first-degree murder.

Hurt's challenge to the hard 50 sentencing scheme is based on the holding of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), that facts which increase the penalty for a crime beyond the prescribed statutory maximum must be proved to a jury beyond a reasonable doubt. This court addressed a similar challenge to the hard 40 sentencing scheme in *State v.*

*Conley*, 270 Kan. 18, 11 P.3d 1147 (2000), *cert. denied* 532 U.S. 932 (2001). The *Conley* court held that imposition of a hard 40 sentence does not increase a defendant's maximum sentence of imprisonment for life. Rather, it limits the lower end of the sentence, which is consistent with *McMillan v. Pennsylvania*, 477 U.S. 79, 88-89, 91 L. Ed. 2d 67, 106 S. Ct. 2411 (1986) (facts that do not increase defendant's punishment beyond that authorized by the underlying statute need not be proven to a jury beyond a reasonable doubt). The court concluded that because the hard 40 sentence did not increase the length of Conley's life sentence, and because the *Apprendi* court had refused to overturn *McMillan,* the 40-year mandatory minimum sentence did not violate the rule announced in *Apprendi. Conley,* 270 Kan. at 30-35; see also *Harris v. United States,* 536 U.S. 545, 567, 153 L. Ed. 2d 524, 122 S. Ct. 2406 (2002) ("Within the range authorized by the jury's verdict, however, the political system may channel judicial discretion—and rely upon judicial expertise—by requiring defendants to serve minimum terms after judges make certain factual findings.")

This court relied on *Conley* in holding that the hard 50 sentencing scheme is constitutional in *State v. Douglas,* 274 Kan. 96, 111-12, 49 P.3d 446 (2002), *cert. denied* 537 U.S. 1198 (2003). The court reaffirmed that ruling in *State v. Boldridge,* 274 Kan. 795, 57 P.3d 8 (2002), *cert. denied* 538 U.S. 950 (2003), and *Hebert,* 277 Kan. 61. Hurt has cited no new authority postdating those cases which might convince this court to alter its position.

Recently, the United States Supreme Court decided *Blakely v. Washington,* 542 U.S. 296, 159 L. Ed. 2d 403, 124 S. Ct. 2531 (2004), in which a defendant pled guilty to kidnapping his estranged wife, a crime which carried a maximum prison sentence of 53 months under a Washington state statute. The sentencing judge imposed a 90-month sentence pursuant to another Washington statute which allowed the judge to impose an "exceptional sentence" upon finding that the defendant acted with "deliberate cruelty." 542 U.S. at 300. The *Blakely* court held the judge's imposition of a 90-month sentence violated the defendant's right to a jury trial under the holding of *Apprendi.* 542 U.S. at 305.

In essence, *Blakely* validates this court's decision in *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001), holding that Kansas' sentencing scheme, which allowed the imposition of upward durational departures based on judicial findings of fact, violated a defendant's constitutional rights to due process and a jury trial. However, *Blakely* does not affect this court's analysis in *Conley* that exposing a defendant to a later parole eligibility based upon a judge's factual finding only limits the lower end of the sentence and is not the equivalent of exposing a defendant to an increased maximum penalty. See *Conley*, 270 Kan. at 33-34. The court in *Blakely* distinguished *McMillan*, the decision upon which the analysis in *Conley* is based.

Thus, we reject Hurt's argument that *Conley* was wrongly decided.

*Was the Evidence Sufficient to Support Hurt's Conviction of Aggravated Assault Where the Victim Testified on Cross-Examination That He was not Scared or Fearful of Injury?*

Finally, Hurt contends that there was insufficient evidence to support his conviction for aggravated assault where the victim, Marvell Hill, testified under cross-examination that he was not scared or fearful of injury. Aggravated assault is defined as "intentionally placing another person in reasonable apprehension of immediate bodily harm." K.S.A. 21-3408. Hurt contends the State failed to show Hill was in reasonable apprehension of immediate bodily harm; therefore, his conviction for aggravated assault must be reversed.

When a criminal defendant challenges the sufficiency of the evidence, "the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt." *State v. Beach*, 275 Kan. 603, Syl. ¶ 2, 67 P.3d 121 (2003).

During direct examination, Hill testified that he ran away from Hurt after Hurt pointed the gun at him. When Hurt started firing shots, all Hill could think about was maneuvering and running. When asked if he was scared, Hill responded, "Yeah, somebody

shooting at you." Hill also said, "If I would have stood there, I would have been dead."

However, upon cross-examination, the following exchange took place:

"Q. Mr. Hill, you were running away from this scene; isn't that right?
"A. Yes.
"Q. You were scared; right?
"A. No.
"Q. You weren't scared?
"A. Nope.
"Q. You were in no fear that you might be hurt?
"A. Nope."

Viewing Hill's testimony as a whole, and especially his testimony on direct that he was scared and ran when Hurt pointed the gun at him, a rational factfinder could easily find that Hurt placed Hill in reasonable apprehension of immediate bodily harm. Hurt's conviction of aggravated assault stands.

Affirmed.